**24**

Ute R. HARRISS and Margaret A. Feather, Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

Albert PRICE et al., Plaintiffs,

v.

LUCKY STORES, INC., et al., Defendants,

Jesse Shelmire et al., Plaintiffs-Intervenors.

Linda L. MATHISON, on behalf of herself and others similarly situated, Plaintiff,

v.

FOREMOST–McKESSON, INC., a Maryland Corporation, Defendant.

Patricia J. GROHAL, Individually and on behalf of all others similarly situated, Plaintiff,

v.

STAUFFER CHEMICAL COMPANY, INC., Defendant.

Cassandra JACKSON, also known as Cassandra Jackson Waters, on behalf of herself and others similarly situated, Plaintiff,

v.

STAUFFER CHEMICAL COMPANY, Defendant.

Martha SANDOVAL and Samuel Thompson, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

MOORE BUSINESS FORMS, INC., et al., Defendants.

W. Faye SMITH, on behalf of herself and all other persons similarly situated, Plaintiff,

v.

CRESCENT JEWELERS, a Commercial Enterprise, and Victor Graber, President of Crescent Jewelers, Defendants.

Nos. C–74–1884, C–72–0838, C–76–0512, C–74–1270, C–76–0079, C–74–2558 and C–74–0224 WWS.

United States District Court, N. D. California, Civil Division.

Jan. 24, 1977.

David R. Lipson, Ronald Yank, Carroll, Burdick & McDonough, San Francisco, Cal., Robert B. Wallace, Lawyers' Committee For Civil Rights Under Law, Washington, D.C., for plaintiffs in No. C–74–1884.

Robert S. Venning, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant in No. C–74–1884.

Henry Hewitt, John H. Erickson, Mariam Steinbock, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiffs and intervenors.

Robert N. Wood, George J. Barron, Donahue, Gallagher, Thomas & Woods, Oakland, Cal., for defendant Lucky Stores, Inc.

Duane B. Beeson, Brundage, Beeson, Tayer & Kovach, San Francisco, Cal., for defendants Warehouse, Mail Order and Retail Employees Local 853.

David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for defendants Teamsters Local 70 Butchers Union Local 120.

John T. Hansen, San Francisco, Cal., for plaintiff in No. C–76–0512.

James C. Paras, Raymond L. Wheeler, James N. Odle, Karen L. Hoeg, Morrison & Foerster, San Francisco, Cal., for defendant in No. C–76–0512.

Dayne Lee Russell, San Francisco, Cal., for plaintiff Patricia J. Grohal.

Nancy Scott Ince, San Francisco, Cal., for plaintiff Cassandra Jackson Waters.

William L. Diedrich, Jr., David A. Rotman, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant Stauffer Chemical Co.

Clifford Sweet, Legal Aid Society of Alameda County, Dale F. Rubin, Oakland, Cal., for plaintiffs in No. C–74–2558.

Stephen A. McFeely, William H. Waysman, Crosby, Heafey, Roach & May, Oakland, Cal., for defendants in No. C–74–2558.

Mary C. Dunlap, Jo Ann Chandler, Nancy L. Davis, Joan Messing Graff, Equal Rights Advocates, Inc., San Francisco, Cal., for plaintiff in No. C–74–0224.

Joel Zebrack, Burnstein & Zebrack, Oakland, Cal., Barbara Ashley Phillips, Carter, Cook, Phillips & Voltz, San Francisco, Cal., for defendants in No. C–74–0224.

## OPINION AND ORDERS DETERMINING WHETHER ACTIONS MAY BE MAINTAINED AS CLASS ACTIONS

SCHWARZER, District Judge.

### INTRODUCTION

Motions are pending before the Court in seven different actions brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) for class action determinations under Rule 23(c)(1), Fed.R.Civ.P.[1] All of the motions raised common issues involving the application of Rule 23 to Title VII litigation. For that reason, judicial economy warrants consolidated treatment. We therefore begin with a discussion of the general principles governing the maintainability of Title VII actions as class actions relevant to all of the motions. Next, we shall deal separately with the motions made in each of the actions in the light of these general principles and of the discussion in connection with the other motions.

The Court recognizes that few, if any, hard and fast rules exist with respect to Title VII class actions and, in addition, that the subject presents a moving target as new decisions issue constantly. Nonetheless, analysis of the rule, the statute, the case law and the underlying policies permits a distillation of controlling principles and relevant factors for making the determination whether an action may be maintained as a class action.[2]

I. *Class Action Determination in Title VII Cases*

Rule 23(c)(1) states

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained . . . ."

The obligation to initiate and make a timely determination under this paragraph is a part of the management responsibility imposed on the District Court by Rule 23 and rests on the court, regardless of whether a motion for determination has been made by either party. See, *Rodriquez v. East Texas Motor Freight,* 505 F.2d 40, 50 (5th Cir. 1974), *cert. granted,* 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976). In making the determination, the District Court has broad discretion and its decision will not be disturbed on appeal in the absence of a finding of abuse, provided the court has made findings which reflect the material facts and the reasons on which its decision is based. *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9th Cir. 1974); *Kamm v. California City Development Co.,* 509 F.2d 205, 210 (9th Cir. 1975).

Two general questions arise in connection with making the determination under Rule 23(c)(1):

A. By what process is the mandate of the Rule to be discharged; and

---

1. Section 703(a) of the act (42 U.S.C. § 2000e–2(a) provides:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

2. The principles discussed herein generally apply as well to class actions brought under 42 U.S.C. § 1981.

B. How are the requirements of Rule 23(a) and (b) to be applied in Title VII litigation.

### A. The Process of Class Determination in Title VII Cases.

■ Rule 23(c)(1) requires the court, where "an action [is] brought as a class action . . . [to] determine . . . whether it is to be so maintained . . ." The language of the rule is significant. It does not mandate the court at this stage of the proceeding to determine or "certify" the appropriate class or otherwise to undertake the task of defining the class; in fact, nowhere in Rule 23 is there any provision for "certification." The rule is limited to directing the court to determine whether the action may be maintained as a class action. See, generally 3B J. Moore, Federal Practice ¶ 23.50; 7A Wright & Miller, Federal Practice and Procedure § 1785.[3] In making that determination, the court must necessarily pass on the appropriateness of the class proposed by plaintiff, and perhaps by defendant, and arrive at its own tentative definition of the class on whose behalf the action may be maintained. Such a definition may be relevant to future discovery and to trial preparation, but it remains subject to change and does not establish the class which will be bound by the judgment. See, *Gibson v. Local 40, Supercargoes and Checkers,* 543 F.2d 1259 (9th Cir. 1976) (class re-defined and limited on appeal); *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir. 1975) (upholding trial court's limitation on proposed class).

■ A motion for a determination under Rule 23(c)(1) whether the action may be maintained as a class action may be made by any party, or at the instance of the court. The Rule provides that the determination shall be made "as soon as practicable after the commencement of an action." The burden of establishing that the action may be maintained as a class action is on the class plaintiff. *Redhouse v. Quality Ford Sales Inc.,* 511 F.2d 230, 235 (10th Cir. 1975); *Poindexter v. Teubert,* 462 F.2d 1096 (4th Cir. 1972); see, also, *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969) (Goodbold, J. concurring); *Huff v. N. D. Cass Co.,* 485 F.2d 710, 712 (5th Cir. 1973); 3B J. Moore, Federal Practice ¶ 23.02–2.

Normally, when a (c)(1) motion is made, the court will have before it a complaint and motion papers containing a class description of some sort. Depending on how long the action has been pending and how vigorously it has been prosecuted, there will also be some product of discovery. Because Rule 23(c)(1) clearly contemplates early action by the court, however, discovery will not have been concluded and the factual record is therefore likely to be incomplete. As will be discussed below, the facts relevant to the class action determination and definition may largely be the same as those relevant to the merits of the action. Facts bearing on liability and relief will also tend to have a bearing on numerosity, commonality, typicality and adequacy of representation. See, *Huff v. N. D. Cass Co.,* 485 F.2d 710 (5th Cir. 1973); *Long v. Sapp,* 502 F.2d 34, 42 (5th Cir. 1974). Hence, in making the (c)(1) determination, the court should have in mind that the record bearing on class issues cannot be assumed to be complete.

■ For that reason alone, any determination that the action may be maintained on behalf of a particular class should be tentative and any order, as Rule 23(c)(1) provides, should be understood to be subject to change before decision on the merits.

---

**3.** The origins of the widely used concept of "class certification" are obscure. The Rule does not provide for it. Neither Moore nor Wright and Miller refer to it, and no case authority for its use has been found. It is at best semantically misleading by implying a degree of finality and authority which paragraph (c)(1) by its very language withholds from a determination. The thrust of the first part of this opinion is that District Courts should follow the language of Rule 23(c)(1) and determine only that the action may or may not be maintained as a class action, subject to further order. While such a determination may include a finding that there is a particular class on whose behalf the action may be maintained, that finding, as discussed below, is for procedural purposes only.

On the other hand, the court may of course defer a (c)(1) determination pending further discovery if it finds the record to be inadequate.

Because of the intertwining of the facts bearing on the class issue with those bearing on the merits, it is also important that the (c)(1) determination not be treated or regarded as a preliminary hearing on the merits. To permit a class determination, made on an incomplete record, to carry implications as to the ultimate decision on the merits would be unfair to the parties as well as to the court.

This reasoning is supported by the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974), which states:

> "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."

■ The Court's statement means not only that the court may not hold a so-called mini-trial to make the class determination, but also that this determination may not be made to turn on whether the representative plaintiff has a meritorious claim. *Huff v. N. D. Cass Co.,* 485 F.2d 710, 712 (5th Cir. 1973) (en banc); cf. *Miller v. Mackey International Inc.,* 452 F.2d 424, 427 (5th Cir. 1971).[4]

Accordingly, a (c)(1) order determining that the action may be maintained as a class action is essentially a procedural order. It carries no implication respecting the merits of the case. Nor does it determine that the class on whose behalf the action may be maintained will be the class which would recover relief should relief be granted. Rule 23(c)(1) contemplates that it "may be conditional and may be altered or amended before the decision on the merits,"

and Rule 23(c)(3) further explicates that it is "[t]he *judgment* [not any prior order] in an action maintained as a class action . . . [which] shall describe those whom the court finds to be members of the class." (Emphasis added.)

■ While Rule 23 thus clearly contemplates that the initial (c)(1) determination of the court may be changed as the litigation progresses and the factual record is developed—both as to whether the action may be maintained as a class action and as to the parameters of the appropriate class, if any—that power must be exercised with regard to the due process rights of the litigating as well as the absent parties.[5] The situation is not unlike that of an amendment of pleadings to conform to the evidence; the test to be applied is whether the changed class is within the issues tried by express or implied consent of the parties. Cf. Rule 15(b), Fed.R.Civ.P.; and see *EEOC v. Detroit Edison,* 515 F.2d 301, 310 (6th Cir. 1975), where the court, after trial of an action brought on behalf of "all black Edison Employees," entered a decision on the merits for a class which in addition included rejected applicants for employment and those who were deterred altogether from applying. The Court of Appeals found the enlargement of the class to have been unfair since the parties had proceeded to trial on the basis of a different class determination.

■ One further aspect of the (c)(1) determination is that it may be made for a limited purpose. In actions under Rule 23(b)(2), a broad class may often be appropriate for adjudication of liability and class-wide injunctive relief. Where individual relief is also sought in such an action, such as back pay or retroactive seniority, different questions may arise as to whether a class action may be maintained to obtain that relief, and bifurcation of the liability

---

**4.** See note 21, below.

**5.** *Air Line Stew. & S. Assoc. v. American Airlines, Inc.,* 490 F.2d 636, 643 (7th Cir. 1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974), illustrates how events in the course of the litigation, there the abandonment of the policy to discharge pregnant women, may substantially change the nature of the class action.

and relief phases under Rule 42(b) will often be appropriate. The initial (c)(1) determination in such cases should therefore be regarded as having been made for limited purposes only (regardless of whether bifurcation has been formally ordered), leaving open the question of class treatment in the subsequent phases of the litigation. Rule 23(c)(1), by providing that the determination "may be altered or amended before the decision on the merits", clearly authorizes this approach. See, *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 256–258 (5th Cir. 1974); *Piva v. Xerox Corp.*, 70 F.R.D. 378, 390 (N.D.Cal.1976). All of the class determinations made in the following orders should be so regarded.

■ The general principles we have discussed apply to Title VII cases no less than they do to other actions.[6] See, *Taylor v. Safeway Stores*, 524 F.2d 263, 269 (10th Cir. 1975). It has been suggested that because of the broad remedial purposes of Title VII and the "inherent" class character of claims under it, the courts should give Rule 23 a "liberal construction" in such cases. See, *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 50 (5th Cir. 1974), *cert. granted*, 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976). See, also, the Conference Committee's section-by-section analysis of the 1972 amendments to Title VII as a part of which a provision prohibiting class actions was specifically rejected. 118 Cong.Rec. 7166, 7168 (1972). In the Fifth Circuit this policy has been implemented by "certification" of so-called across-the-board classes. See, e. g. *Rodriguez v. East Texas Motor Freight*, above. But, as will be discussed below, "liberal" application of Rule 23 to Title VII cases will not necessarily promote its remedial purposes if it means failure to adhere to and fully enforce the requirements of Rule 23 whose purpose is to balance and protect the rights of all parties, present and absent.[7] The better approach would seem to be a neutral application of Rule 23 in accordance with the procedural principles here discussed.[8]

### B. *Application of the Requirements of Rule 23(a) and (b) to Title VII Actions.*

#### 1. *General.*

Under the foregoing analysis, Rule 23(c)(1) requires the court to determine whether the procedural requirements of Rule 23(a) and (b) are met, not to define or "certify" the particular class to which relief may be granted or denied. The court's

---

**6.** Cf. 28 U.S.C. § 2072 providing that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right . . ."

**7.** See the concurring opinion of Judge Godbold in *Johnson v. Georgia Highway Express Inc.*, 417 F.2d 1122, 1126 (5th Cir. 1969):

"And, what may be most significant, an overbroad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process. Envision the hypothetical attorney with a single client, filing a class action to halt all racial discrimination in all the numerous plants and facilities of one of America's mammoth corporations. One act, or a few acts, at one or a few places, can be charged to be part of a practice or policy quickening an injunction against all racial discrimination by the employer at all places. It is tidy, convenient for the courts fearing a flood of Title VII cases, and dandy for the employees if their champion wins. But what of the catastrophic consequences if the plaintiff loses and carries the class down with him, or proves only such limited facts that no practice or policy can be found, leaving him afloat but sinking the class?"

Compare Developments—Class Actions, 89 Harv.L.Rev. 1318, 1366–1371 (1976) (Class actions may be justified because of "the contributions [they] make to full realization of substantive policy."). See, also, the discussion in footnote 16, below, with respect to the interplay of res judicata and due process.

**8.** Since the writing of this opinion the Supreme Court has held that careful attention to the requirements of Rule 23 is as necessary in Title VII actions as in other actions. *East Texas Motor Freight System, Inc. v. Rodriguez*, —— U.S. ——, 97, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

determination may contemplate one or more classes or subclasses which may or may not be those urged in the pleadings. But they are classes for procedural purposes only, determined on what must be acknowledged to be an incomplete record at an early stage of the litigation, without reference to the merits.

■ In the sequence of the requirements set forth in Rule 23(a), numerosity comes first—"the class is so numerous that joinder of all members is impracticable." But logic dictates that this issue is best addressed after the other requirements have been applied to the proposed class to determine the appropriate parameters and the size of the membership of the resulting class.

### 2. *Common Questions of Law or Fact.*

■ Rule 23(a)(2) requires that "there are questions of law or fact common to the class . . ."
This part of the rule encompasses the threefold requirement that the representative plaintiff (a) have an actionable claim sufficient to give rise to a justiciable controversy, (b) be a member of the class on whose behalf the action is to be maintained, and (c) assert a claim raising issues common to the class.

#### a. *Case or Controversy.*

Rule 23 obviously does not eliminate the "case or controversy" requirement of Article III of the Constitution. Neither Rule 23 nor Title VII open the door to general inquisitions by the courts into employment conditions of a defendant. See, *LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 463–464 (9th Cir. 1973).

■ The complaint in a proper class action must allege a particularized violation of Title VII. Plaintiff must assert a specific claim of injury on his or her behalf resulting from an alleged unlawful employment practice of defendant. See, *O'Shea v. Littleton,* 414 U.S. 488, 494–495, n. 3, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).[9] But the action does not become moot merely because the representative plaintiff may at some point no longer have an interest in it, either because he has obtained the desired relief for himself or ceases to be eligible for it. In its most recent decision in this area, the Supreme Court held that where the action is properly maintained as a class action, and a live controversy remains with respect to the members of the class who continue to have a stake in its outcome, the action does not for that reason become moot. *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

#### b. *Plaintiff a Member of the Class.*

■ The representative plaintiff must be a member of the class he claims to represent.[10] This means that in the first

---

**9.** A different ramification of the case or controversy requirement may arise in a case where plaintiff sues a class of *defendants,* including not only the defendant whose conduct may have adversely affected plaintiff but also others against which the representative plaintiff himself has no claim (although other unnamed members of the class might). Unless the defendants are sufficiently related so that they could be regarded as a substantially single unit for (b)(2) purposes, it is doubtful that a multiple defendant Title VII action could be maintained as a class action. See, *LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466, 470 (9th Cir. 1973).

**10.** Cases involving "standing" issues are to be distinguished inasmuch as they do not involve the central issue raised by Rule 23, whether a plaintiff may be treated as being sufficiently representative so that the resulting benefits of judicial economy and efficiency outweigh whatever risks arise to absent members of the class whose rights are being adjudicated. Compare, *Waters v. Heublein, Inc.,* No. 74–2870, 547 F.2d 466 at 470 (9th Cir. Nov. 12, 1976).

A related issue is whether an association, as opposed to an individual, may be a representative plaintiff. Although members of the class may be members of the association or other organization, it is itself not a member of the class and would therefore normally be barred as a class plaintiff unless perhaps its raison d'être is to represent the class. See, *Norwalk Core v. Norwalk Redevelopment Agency,* 395 F.2d 920 (2nd Cir. 1968).

instance, there is a "class," i. e., a more or less homogeneous group of persons whose identity is or will eventually be ascertainable. Cf. *EEOC v. Detroit Edison Co.,* 515 F.2d 301, 311–312 (6th Cir. 1975) (persons deterred from applying for jobs by defendant's reputation for discrimination excluded from class, at least in the absence of proof of identity); *Lopez Tijerina v. Henry,* 48 F.R.D. 274, 275–277 (D.N.M.1969) (proposed class of poor persons having Spanish surnames, Mexican, Indian or Spanish ancestry, and speaking Spanish as their primary language rejected as inadequately defined).[11] And plaintiff must qualify as a member of the class. *Wells v. Ramsay, Scarlett & Co.,* 506 F.2d 436, 437–438 (5th Cir. 1975).

It has generally been held that present as well as former employees and persons who may in the future become employees may be members of a single class, and that the class may also include identifiable applicants, subject to their meeting the requirements of Rule 23. Either past or present employees or applicants may be the representative plaintiffs—there are obvious policy reasons for permitting terminated employees or rejected applicants to assert common class claims that a present employee may be reluctant to press. See, e. g., *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969) (discharged black employee may represent all blacks seeking equal employment opportunities without racial discrimination); *Reed v. Arlington Hotel Co., Inc.,* 476 F.2d 721, 723 (8th Cir. 1973) (discharged black employee may raise issue of discrimination against blacks generally); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 428 (8th Cir. 1970) (rejected black applicant may attack employment policies generally); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3rd Cir. 1975) (former female employees who had voluntarily resigned and were not seeking reinstatement could represent class of past, present and future female technical employees); *Tipler v. E. I. Dupont Denemours and Co.,* 443 F.2d 125, 130 (6th Cir. 1971) (discharged employee seeking reinstatement may represent current employees); *Carr v. Conoco Plastics, Inc.,* 423 F.2d 57 (5th Cir. 1970) (applicant may represent current employees); but compare *EEOC v. Detroit Edison Co.,* 515 F.2d 301, 310–311 (6th Cir. 1975) and the discussion under Rule 23(a)(4) below. Conflicts which may arise among members of such classes with respect to relief may be managed by the court by subclassing, subsequent redetermination or the exercise of its other discretionary powers under Rule 23(c) and (d), as discussed elsewhere in this opinion.

c. *Issues Common to the Class.*

The general nature of a Title VII claim was described by the Supreme Court in *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971) as follows:

> "Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications . . . Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."

There is no definition, however, of what constitutes sufficient "commonality" to qualify under this rule.

To begin with, only the representative plaintiff's claim needs to meet the jurisdictional requirements of Title VII, such as the timely filing of an EEOC charge and of the complaint in the action. 42 U.S.C. § 2000e–5. It is not necessary, however, as discussed above, that the plaintiff's own claim be meritorious. Other members of the class need not individually meet the jurisdictional requirements of the act so long as they would have been capable

---

11. See also Rule 65(d), Fed.R.Civ.P., requiring that injunctions "shall be specific in terms,"

and *Schmidt v. Lessard,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974).

of having done so. *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 771, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir. 1969). Thus a member of the class need not himself have filed an EEOC charge but he is limited to claims with respect to which he would have been able to file an EEOC charge at or after the time the representative plaintiff filed. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3rd Cir. 1975); cf. *Mather v. Western Airlines, Inc.,* 59 F.R.D. 535, 536–537 (C.D.Cal.1973).[12]

■ Title VII cases which normally fall within Rule 23(b)(2) are likely to meet the common question requirement if they meet the (b)(2) test that the opposing party "has acted or refused to act on *grounds generally applicable to the class* . . ." (emphasis added). A demonstration with some specificity of the existence of such grounds (i. e., more than the mere conclusory claim of racial or sex-based discrimination) and their common application to a defined class should substantially satisfy the commonality requirement in Title VII cases.

■ The outer as well as the inner limits or commonality must of course depend on the facts and circumstances of each case. An appropriate class should not reach for membership beyond what appear to be the bounds of the group shown to have been commonly affected; nor should the class be so narrowly drawn as to exclude others who would clearly be entitled to the same relief were plaintiff to prevail.

■ In the context of litigation over alleged unlawful employment practices, relevant criteria of commonality include the following:

(i) What is the nature of the unlawful employment practice charged—is it one that peculiarly affects only one or a few employees or is it genuinely one having a class-wide impact.[13]

(ii) How uniform or diverse are the relevant employment practices of the employer, considering matters such as: size of the work force; number of plants and installations involved; extent of diversity of employment conditions, occupations and work activities; degree of geographic dispersion of the employees and of intra-company employee transfers and interchanges; degree of decentralization of administration and supervision as opposed to the degree of local autonomy.

(iii) How uniform or diverse is the membership of the class, in terms of the likelihood that the members' treatment will involve common questions.

(iv) What is the nature of the employer's management organization as it relates to the degree of centralization and uniformity of relevant employment and personnel policies and practices.

(v) What is the length of the time span covered by the allegations, as it relates to the degree of probability that similar conditions prevailed throughout the period.

### 3. *Claims or Defenses Typical of the Class.*

Rule 23(a)(3) requires that

"The claims or defenses of the representative parties are typical of the claims or defenses of the class . . ."

The line between the (a)(2) commonality requirement and the (a)(3) typicality requirement is murky—undoubtedly, there is much overlap between the two.

■ But as the court in *Taylor v. Safeway Stores Inc.,* 524 F.2d 263, 270 (10th Cir.

---

**12.** An EEOC charge must be filed within 180 days of the occurrence of the alleged unlawful employment practice, or within 300 days if proceedings are first instituted with a state or local agency, 42 U.S.C. § 2000e–5(e). Ordinarily, therefore, to be eligible as a class member, a person must have been an employee (or rejected applicant) during the 180/300 day period

preceding the filing of the EEOC charge by the representative plaintiff.

**13.** See *Washington v. Safeway Corp.,* 467 F.2d 945 (10th Cir. 1972); *Patterson v. General Motors,* 10 F.E.P. 921 (N.D.Ill.1974). See also the discussion on typicality in the following section of this opinion.

1975) made clear, "subsection (a)(3) must have a meaning independent of the other provisions of Rule 23(a)"—what paragraph (a)(3) requires is a showing ·by the class action plaintiff that "there is in fact a class needing representation." This involves "a comparison of the claims or defenses of the representative with the claims or defenses of the class."

 The plaintiff has the burden of establishing a claim of unlawful employment practices affecting an ascertainable class of persons of which he is a member.[14] As pointed out in the foregoing section, class actions are a procedural device for promoting the economic and efficient disposition of justiciable controversies, not a vehicle for an investigative proceeding. Thus there must be a showing that the representative plaintiff has a claim which affects the members of the class to an extent that "the interest of the representative party . . [is] coextensive with the interest of the entire class . . ." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–563 (2nd Cir. 1968). See, also, *Patterson v. General Motors,* 10 F.E.P. 921 (N.D.Ill.1974). As one of the authors of Rule 23 put it, the representative plaintiff must be "squarely aligned in interest" with the represented class. See, Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 387 n. 120 (1967).

 To determine whether a sufficient community of interest exists to make plaintiff's claim typical of that of the class, several relevant factors suggest themselves:

(i) is plaintiff's situation—his position, occupation, and terms and conditions of employment—typical of the situation of those he seeks to represent;

(ii) are the circumstances surrounding plaintiff's grievance typical of those relating to the claim of the class;

(iii) will the relief sought by plaintiff benefit the class, and is plaintiff under the circumstances of the case likely to seek to benefit the class rather than merely himself.

### 4. Fair and Adequate Protection of the Interests of the Class.

Rule 23(a)(4) requires that

"the representative parties will fairly and adequately protect the interests of the class."

Adequacy of representation in a class action is perhaps the most crucial requirement because the judgment will conclusively determine the rights of absent members. See, *Hansberry v. Lee,* 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940). This requirement serves as a counterpoise to the considerations of economy and efficiency which support Rule 23.

 The ingredients of fair and adequate representation are

a. that the representative party's attorney be qualified, experienced and generally able to conduct the litigation, and

b. that the suit not be ·collusive and plaintiff's interests not be antagonistic to those of the remainder of the class. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–563 (2nd Cir. 1968).

 Compliance with these requirements must be more scrupulously observed in Title VII cases than in most other class actions because paragraph (b)(2), under which they are normally brought, gives absent members no right to receive notice or to opt out, as is the case in (b)(3) actions.

### a. Adequacy of Legal Representation.

 In its recent decision in *Mandujano v. Basic Vegetable Products Inc.,* 541 F.2d 832, 835 (9th Cir. 1976), the Ninth Circuit analyzed the role of counsel in class actions. It pointed out that "the class is not the

---

**14.** See the concurring opinion of Judge Godbold in *Johnson v. Georgia Highway Express Inc.,* 417 F.2d 1122, 1126 (5th Cir. 1969):

"The pleadings structure no class by defined acts, by time, by persons, by plant, by department, by supervisor, or by any other means. The appellant has done no more than name the preserve on which he intends to hunt."

client. The class attorney . . . (has) responsibilities to each individual member of the class . . ." There is accordingly an overriding professional obligation which imposes a strict standard of congruence of interest upon the proposed class. The representative plaintiff's attorney is under a duty to sift the interests of the members of the proposed class and assure himself that those on whose behalf the class action is proposed to be maintained have no potentially differing interests.[15]

■ Thus, the absence of conflicting interests among class members, judged by the normal professional standards, may itself be said to be an element of the class attorney's qualifications. Beyond that, the attorney's zeal, competence and experience are factors relevant to the District Court's exercise of discretion in this respect. *Fendler v. Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975); *Lau v. Standard Oil Co.*, 70 F.R.D. 526, 527 (N.D.Cal.1975).

■ But adequacy of representation has a broader dimension than the attorney's competence or absence of conflict. As Judge Godbold has so persuasively argued, the framing of over-broad classes may result in the loss of claims of absent members which, had the class been appropriately framed, might well have been successfully asserted.[16] The potential res judicata, or at least collateral estoppel effect of any judgment in the action makes it imperative that the absent members on whom it works will not be deprived of their day in court. See, *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 311 (6th Cir. 1975).[17]

One important aspect of this due process element is that the representative plaintiff will be able to present effectively whatever claims that class may have—through discovery and settlement or trial. For example, a claim by a small local group of plaintiffs to represent all racial minority employees of a large nation-wide firm should raise a serious doubt in the court's mind, regardless of whether all of the other requirements of the rule are met, as to their ability adequately to present a case on behalf of such a large and diverse class. Cf. *Hyatt v. United Aircraft, Sikorsky Aircraft Division*, 50 F.R.D. 242, 245 (D.Conn.1970) (plaintiff unfamiliar with defendant's practices and policies because he had not been employed for two years found to be inadequate representative).

15. As Judge Sneed points out in *Mandujano*, above, the lawyer's responsibilities require him to "exercise independent professional judgment on behalf of a client" and to "represent a client zealously within the bounds of the law." 541 F.2d at 835, note 4. It is incumbent on an attorney, urging the court to make a (c)(1) class action determination, to have satisfied himself that he can meet these professional obligations with respect to the proposed class. While *Mandujano* is concerned with adequacy of representation in connection with approval of a class action settlement, the controlling considerations are no different at the (c)(1) stage, particularly because settlement prospects may arise at any point in the litigation.

16. See note 7, above.

17. Because for the most part judgments in Title VII cases affecting absent members will be equitable decrees, they are presumably subject to modification by the court on good cause shown. Normally, however, that is not likely to permit merely retrying issues comprehended within the "common questions of law or fact" decided in the action, particularly where they deal with past relief, such as back pay. A request for modification of a decree must ordinarily be based on a showing of changed conditions since the time of judgment. See, *Pasadena City Bd. of Education v. Spangler*, 427 U.S. 424, 96 S.Ct. 2697, 2705, 49 L.Ed.2d 599 (1976); *King-Seeley Thermos Co. v. Aladdin Industries Inc.*, 418 F.2d 31, 34 (2nd Cir. 1969). But, see, *Commissioner v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948) recognizing that collateral estoppel is intended only to prevent repetitious litigation over matters where there has been no significant change in facts or law which would render the earlier decision obsolete or discriminatory in its application.

Conversely, any decree could be subject to attack on due process grounds if entered without proper regard for the requirements of Rule 23, i. e., if absent class members without notice were inadequately represented in proceedings affecting their substantial rights. See, *Hansberry v. Lee*, 311 U.S. 321, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Acree v. Air Line Pilots' Assoc.*, 390 F.2d 199, 202 (5th Cir.), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968); *Lewis v. Phillip Morris*, 419 F.Supp. 345 (E.D.Va.1976), and cases cited.

■ Adequacy of representation has other ramifications. For example, because of the crucial importance of statistics in Title VII cases, the dimensions of the class may well affect the merits of the case. An employee of a large employer may be able to make an effective statistical case based on one operational unit but may find the statistics to be hopelessly diluted when applied to a larger segment of the work force. A claim possibly valid as to a limited class may be lost in an attempt to prosecute it on behalf of a broad class. In determining adequacy of representation, the rule requires the court, in light of the facts of each case, to balance its underlying principles—the promotion of judicial efficiency and economy and the protection of the rights of absent persons.

### b. *Absence of Antagonistic Interests Within the Class.*

Considerations of fairness, if not due process, compel the District Court to undertake, in addition to the determinations heretofore discussed, a searching and thoughtful analysis of the interests affected by the action. In some cases, the existence of antagonistic interests will be apparent from the face of the pleadings. See, *Air Line Stew. & S. Assn. v. American Airlines, Inc.,* 490 F.2d 636, 640 (7th Cir. 1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974) (Union of airline cabin attendants not an adequate representative of a class of former stewardesses). In others, the existence or possibility of antagonism may not be obvious. Subtle problems of conflicting seniority rights, layoff or call back priorities, opportunities for promotion or advancement, access to training programs and other conditions of employment may be involved where a remedy granted to one person may disadvantage another. See, e. g. *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (retroactive competitive seniority permitted to date of unlawful denial of application); *Mandujano v. Basic Vegetable Products, Inc.,* 541 F.2d 832, 837 (9th Cir. 1976). This may be true even though the class may present common questions of law and fact and the plaintiff's claim can pass the typicality test.[18]

■ Neither plaintiff nor defendant can always be depended upon to disclose such intra-class antagonism since each for different reasons may seek a broad class determination, plaintiff for the monetary recovery and defendant for the res judicata benefits. It may therefore at times be necessary for the court to probe beneath the surface of the pleadings for the existence of antagonisms sufficient to preclude maintenance of the class action, either in its entirety or as framed by plaintiff. That probing process, moreover, must continue after the (c)(1) stage until the decision on the merits to assure that the class bound by the judgment was adequately represented.

■ In this connection, the District Court may well consider resort to some form of notice procedure to inform potential class members of the litigation, to ascertain whether antagonisms (or, for that matter, common claims) exist, and to afford persons the opportunity to exclude themselves or to intervene and appear through counsel. Although Title VII actions are normally maintained as (b)(2) actions, notice, while not required as it is in (b)(3) actions, may nevertheless be directed to be given in the court's discretion under paragraph (d)(2). See, *Arey v. Providence Hospital,* 55 F.R.D. 62 (D.D.C.1972).[19]

---

18. See, e. g., *Gibson v. Local 40 Supercargoes and Checkers ILWU,* 543 F.2d 1259 (9th Cir. 1976), in which the Court of Appeals rejected a class consisting of both casual and permanent clerks. While not expressly referring to paragraph (a)(4), the court noted the failure of plaintiffs to press the possible claims of permanent clerks and the consequent possibility that they were not fairly and adequately represented. 543 F.2d at 1264–1265. See, also *Equal* *Employment Op. Com. v. Detroit Edison Co.,* 515 F.2d 301, 311 (6th Cir. 1975), holding proof insufficient to demonstrate that a group of present black employees of defendants could also adequately represent, as a part of a class, rejected black applicants for employment, even though commonality and typicality requirements may be met.

19. Rule 23(d)(2) provides:

Moreover, the court may provide for the protection of separable interests by resort to Rule 23(c)(4) and direct that "a class . . . be divided into subclasses and each subclass be treated as a class . . . ." See, *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40, 51 (5th Cir. 1974) *cert. granted,* 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976). Where antagonistic interests are suggested by the pleadings, or surface as a result of a notice to the class, the court may provide in its initial (c)(1) determination, or by subsequent amendment, for appropriate subclassing to insure adequate representation.[20]

Finally, as heretofore suggested, the court may determine that potential conflicts compel bifurcation, permitting the action to proceed as a class action for purposes of liability and reserving the question of maintainability (or of subclassing) in the remedy phase. (See Rule 23(c)(4)(A).)

5. *Class too Numerous for Joinder.*

Rule 23(a)(1) requires that

"the class is so numerous that joinder of all members is impracticable . . . ."

It seems reasonable to conclude that the court will be in a better position to apply this requirement after it has performed the analysis under paragraphs (a)(2) through (4). In the course of that analysis, the initially proposed class may be truncated, subdivided, expanded or otherwise modified, thereby affecting the size of the membership. Recognizing that this process should, as heretofore discussed, be made only for the procedural purpose of determining whether the action may be main-

tained as a class action, it may nonetheless result in an order tentatively permitting the action to be maintained on behalf of a class having dimensions different from that proposed in the pleadings. It is that class which in the last analysis must pass muster under (a)(1).

The cases under Title VII appear to offer no guidance as to the point at which joinder becomes "impracticable" within the meaning of (a)(1). In class actions generally, the trend has been to regard classes of approximately thirty or less as not being sufficiently numerous, although there are exceptions in both directions. See 3B J. Moore Federal Practice ¶ 23.05; 7 Wright & Miller, Federal Practice and Procedure § 1762.

Numbers, however, do not alone determine impracticability. Practicability of joinder must be viewed in the light of all the circumstances, including the magnitude of the claim and the degree of dispersion of the prospective plaintiffs.

6. *Action or Refusal to Act on Grounds Generally Applicable to the Class.*

In addition to meeting the requirements of Rule 23(a) discussed above, an action to be maintainable must also qualify under one of the subdivisions of Rule 23(b). Because of the nature of the claim asserted in the usual Title VII case—action or refusal to act constituting an unlawful employment practice—it will generally be sought to be maintained under paragraph (b)(2) which requires that

"the party opposing the class has acted or refused to act on grounds generally appli-

---

"In the conduct of actions to which this rule applies, the court may make appropriate orders . . . (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action . . . or of *the opportunity of members to signify whether they consider the representation fair and adequate,* to intervene and present claims or defenses, or otherwise to come into the action." (Emphasis added.)

See, *Air Line Stew. & S. Assn. v. American Airlines Inc.,* 490 F.2d 636, 643–644 (7th Cir. 1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 256–257 (3rd Cir. 1975).

20. While there is no authority for the court to provide representation in such circumstances (*Mandujano v. Basic Vegetable Products Inc.,* 541 F.2d 832, 835, note 6 (1976)), the court might well succeed in having counsel brought in on the expectation that in the event plaintiffs recover, compensation will be provided as a part of the recovery. 42 U.S.C. § 2000e–5(k).

cable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

See, Advisory Committee's Notes, 39 F.R.D. 69, 102 (1966); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 250–253 (3rd Cir. 1975).

The language of Rule 23(b)(2), while broad, is not to be taken as dispensing with any of the requirements of Rule 23(a). On the other hand, an unlawful employment practice claim which qualifies under Rule 23(b)(2) would normally meet the commonality test under Rule 23(a)(2). The Advisory Committee's Notes indicate that Rule 23(b)(2) specifically contemplates civil rights cases.[21]

■ A class action under (b)(2) does not become moot because the representative plaintiff may for any reason cease to have a claim for injunctive or other relief. *Franks v. Bowman Transp. Co. Inc.*, 424 U.S. 747, 752–757, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).[22] The court may, however, determine that the interests of the class require, particularly under Rule 23(a)(4), that another eligible representative be substituted as a plaintiff and may condition the future maintainability of the action on such a substitution. See, Rule 23(c)(1) (class determination order may be conditional); Advisory Committee Note, 39 F.R.D. at 104 (court may condition class action on improvement of representation through intervention of additional parties of a stated type).

■ Nor does the action cease to be maintainable should injunctive relief no longer be appropriate for the class, or part of it. It is settled that, although an action qualifies under (b)(2), other relief including money damages may be awarded. A range of equitable remedies, including back pay, is within the scope of the court's power under 42 U.S.C. § 2000e–5(g) in a (b)(2) action. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). That power exists even if, in the course of the litigation, the request for injunctive relief becomes moot, as where the defendant abandons the challenged practice. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 251 (3rd Cir. 1975).[23]

**21.** The Advisory Committee's Notes on Rule 23(b)(2) further state:

"The subdivision does not extend to cases in which the appropriate final relief relates *exclusively or predominantly* to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." 39 F.R.D. 69, 98 (1966) (emphasis added).

**22.** See *Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968), holding that class actions may not be dismissed on the ground that the representative plaintiff has been given a promotion the denial of which formed the basis for the original charge. See, also, *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970); *Brown v. Gaston County Dyeing Machine Co.*, 457 F.2d 1377 (4th Cir. 1972). The question here is different, of course, from the question previously discussed whether the representative plaintiff has an actionable claim at the time of the (c)(1) determination.

**23.** See, generally, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), for a discussion of the availability of the back pay remedy in (b)(2) cases under Title VII. Back pay liability exists only for practices occurring after the effective date of the Act, July 2, 1965, and accrues only from a date two years prior to the filing of the charge with the EEOC (a date which must necessarily be determined by reference to the representative plaintiff). Given a finding of unlawful discrimination (and subject to limited exceptions), back pay may be denied only for reasons which, if applied generally, would not frustrate the statutory purposes of eradicating discrimination and making persons whole for injuries suffered through past discrimination. If back pay is denied, therefore, the court's reasons must be carefully articulated. But an award of back pay, since it is intended to make persons whole for injuries suffered, should ordinarily be based on a particularized evaluation of each individual claim. The complexities of individual back pay award entitlements, along with the somewhat individualized aspects of relief with respect to seniority and similar employment benefits, may make appropriate the bifurcation of the litigation into, and distinct Rule 23 treatment of, liability and relief phases.

It has been suggested that where the claim for injunctive relief becomes moot but back pay claims continue, the nature of the action changes to a (b)(3) action. *Air Line Stewards & S. Assn. v. American Airlines Inc.*, 490 F.2d

II. *Harriss, et al. v. Pan American World Airways, Inc.—No. C–74–1884 WWS*

This is an action brought by female flight personnel employed by Pan American World Airways Inc. charging defendant with sex discrimination, by requiring them to take pregnancy leave during a specified period and denying them seniority and other employment benefits while on such leave. The two representative plaintiffs each became pregnant and were subjected to the pregnancy policy.

Plaintiffs and defendant are in agreement that the action should be maintained as a class action. Their differences relate to the definition of the class and the effect of any order issued at this time.

For the reasons discussed in the first part of this opinion, the Court regards any order at this stage as nothing more than a tentative determination for procedural purposes that the action may be maintained as a class action on behalf of a defined class. It is not a determination concerning what if any class may be entitled to recover particular relief. This fact is of particular importance in this case where the policy under attack affects all female flight personnel in some fashion but where any relief against it, should it be held to be unlawful, could affect different members of the class quite differently, particularly with respect to compensatory or competitive seniority. Accordingly, the determination made by this order is limited to the proceedings leading to the decision on the merits of the issue whether defendant's policy is unlawful. In connection with that decision, or in any proceedings subsequent thereto, the Court will determine whether any further proceedings directed to the issue of relief, if any, may be maintained as a class action. The Court will at that time consider, to the extent necessary, such questions as subclassing, notice and intervention.

Plaintiffs have alleged a claim which clearly affects a number of individuals. The total number of female flight attendants employed by defendant is said to exceed 3,000. The alleged discriminatory policy is admittedly company-wide and uniform in its application. It affects female flight attendants employed by defendant, even if it does not necessarily affect them in the same fashion. Plaintiffs, being female flight attendants employed by the company, are among the persons affected. Their counsel are qualified, experienced, and competent.

Thus there is in this case no question but that the requirements of commonality, typicality and numerosity, as well as the test under Rule 23(b)(2), are satisfied. Moreover, there is no reason to doubt that for the purposes covered by this order, plaintiffs will fairly and adequately protect the interests of the class.

The principal issue between the parties concerns the precise definition of the class. Plaintiffs urge that the class consist of two subclasses, namely:

(1) Female flight attendants employed after April 1, 1971 who have been or will be adversely affected by the maternity policy and who have delivered, aborted or miscarried a child or taken maternity leave during the above period;

(2) All other female flight attendants employed during the period not included in the above subclass who have been discour-

636, 642–644 (7th Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974). The principal consequence of such a conversion would be requiring the giving of notice to class members and affording them the privilege of opting out under paragraph (c)(2), (thereby permitting escape from the res judicata effect of any judgment.) In addition, of course, the action would then become subject to the further requirements of paragraph (b)(3). The better rule would seem to be that once an action has been found to qualify under (b)(2),

the nature of the action does not change, even if injunctive relief becomes unnecessary or unavailable, although of course class action treatment in the relief phase may be determined to be inappropriate. It remains one growing out of the action or inaction of the defendant generally applicable to the class, not out of a series of individual claims tied together by the existence of predominant common questions of law or fact, and should therefore, to the extent it continues to be maintained as a class action, continue to be governed by (b)(2) not (b)(3).

aged or dissuaded from becoming pregnant or who have been otherwise adversely affected by the policy.

The problems of interpretation and application of the foregoing definitions are too obvious to require discussion. Standards such as "adversely affected" and "discouraged or dissuaded" would be vague enough in the ordinary case, but when applied to a matter as personal and intimate as pregnancy they become in the Court's view wholly unworkable. Moreover, inasmuch as the instant determination is made for limited purposes only, it is not necessary at this time to make the distinctions which are implied in plaintiff's proposal and which may become necessary, if at all, only in the relief phase of the litigation.

▬▬▬ Plaintiffs also seek to include within the class all those who have been in the employ of defendant since April 1, 1971, the date on which defendant adopted the challenged policy. The first of the charges filed by plaintiffs with the EEOC was not filed until August 20, 1973. The timely filing of an EEOC charge is a jurisdictional prerequisite to an action in the District Court, and such a charge must be filed within 300 days after the alleged unlawful practice occurred. 42 U.S.C. § 2000e–5(e), (f)(1). Although the representative plaintiff alone needs to meet the jurisdictional requirement, only persons capable of having met it, i. e. persons employed on and after the 300th day prior to the date plaintiff filed her charge (October 24, 1972) are eligible for class membership. See, *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3rd Cir. 1975). Accordingly plaintiffs' class is too broad because it would include persons whose claims were barred when plaintiffs filed their EEOC charge.

▬▬▬ Plaintiffs claim that the rule is different where the violation is continuing. Assuming the alleged violation in this case to be a continuing one, a person who has left employment more than three hundred days prior to the filing of the complaint is still barred from the class. This view is consistent with the apparent purpose of the statute to require timely filing of charges,

it was adopted by the Third Circuit in *Wetzel* and it conforms with this Circuit's decision in *Collins v. United Air Lines Inc.*, 514 F.2d 594 (9th Cir. 1975).

▬▬▬ Accordingly, the Court finds that the requirements of Rule 23(a) and (b)(2) have been satisfied and determines that, subject to the conditions and limitations discussed above, the action may be maintained as a class action on behalf of a class consisting of all female flight attendants who have been employed as such by defendant after October 24, 1972, or who may be so employed by defendant in the future.

A status conference will be held in this action on March 11, 1977 at 9:00 a. m.

### III. *Price v. Lucky Stores Inc.—No. C–72–0838 WWS*

This is an action brought by members of racial minorities employed at defendant's San Leandro Distribution Center for relief against alleged racial discrimination in connection with compensation and other terms and conditions of employment.

Each of the representative plaintiffs is either Black, Mexican-American or Native American. Each claims to have been subjected to racial discrimination in connection with transfer, assignment, promotion, discipline or discharge. The named plaintiffs are variously employed in either the grocery warehouse, produce warehouse, meat plant or transportation department at defendant's San Leandro Distribution Center where an estimated 95 employees are members of racial minorities. The center comprises four separate departments—grocery, produce, meat and transportation—but all appear to be physically contiguous and integrally related to defendant's supermarket operations. Each is under a single manager who appears to be a part of the defendant's corporate management group. There is no indication that separate or significantly different employment or personnel policies or practices are administered in the four departments of the center.

All of the representative plaintiffs are engaged in essentially manual occupations

and it appears probable that the same is generally true of other minority employees in the four relevant departments at the center. A sufficient number of minority employees is affected to make it appear that individual joinder is impractical. No grievances are alleged which would render the claim of any of the representative plaintiffs, let alone all of them, atypical of other employees belonging to these racial minorities. The relief sought on behalf of the representatives includes injunctive relief, back pay and reinstatement.

Inasmuch as the earliest EEOC charge of any of the representative plaintiffs was filed on March 14, 1972, the class must, however, be limited to persons who were employed on or after the 300th day preceding that date (May 11, 1971), for the reasons discussed by the Court in *Harriss v. Pan American World Airways Inc.*, above.

Plaintiffs' attorneys are qualified, experienced and competent. For purposes of determining whether defendant engages in unlawful employment practices, there is on this record no reason to doubt that the representative plaintiffs will fairly and adequately protect the interests of other racial minority employees at the center. All of the departments are represented and the operation as a whole is sufficiently compact and homogeneous so as to make it appear that the representative plaintiffs and their attorneys should be capable of presenting the class claims adequately. Compare *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir. 1975).

For the reasons discussed at length above, and specifically in connection with *Harriss v. Pan American World Airways Inc.*, the determination made here is tentative and limited to the proceedings leading up to a decision on the merits of the issue whether defendant's employment policies and practices at its San Leandro Distribution Center violate the prohibition against racial discrimination. As in the *Harriss* case, the Court reserves for subsequent determination the appropriate procedure for deciding issues, if any, pertaining to relief.

Accordingly, the Court finds that the requirements of Rule 23(a) and (b)(2) have been satisfied and determines that, subject to the conditions and limitations discussed above, the action may be maintained as a class action on behalf of a class consisting of all persons who are Black, Spanish-surnamed or Native Americans who have been employed in the grocery warehouse, produce warehouse, meat plant or transportation department at defendant's San Leandro Distribution Center after May 11, 1971, or who may be so employed in the future, or who have on or after May 11, 1971, made written application for such employment or will do so in the future.

A status conference will be held in this action on March 11, 1977 at 9:15 a. m.

## IV. *Mathison v. Foremost-McKesson, Inc. —No. C–76–0512 WWS*

This action is brought by plaintiff on behalf of all women employed at the headquarters offices of Foremost-McKesson and its five major operating divisions in San Francisco, charging discrimination against female employees in connection with compensation, promotion and disability benefits. Because of the difficulty of the issue presented by this case and the volume and high quality of the briefs presented by the parties, it is appropriate to review and analyze the facts in some detail.

Plaintiff, a white woman, has been employed by defendant since 1968. She graduated from the University of California at Berkeley with a Bachelor of Science degree in Business Administration. In 1968, she was hired by Foremost Foods Company, a division of defendant corporation, as a secretary in the Personnel Department. She subsequently received several promotions and is now Manager of Insured Employee Benefits on the corporate staff of Foremost-McKesson Inc. The position she holds is a so-called exempt position within the meaning of the Fair Labor Standards Act, i. e. she is employed in "a bona fide executive, administrative, or professional capacity." (29 U.S.C. § 213(a)(1))

Plaintiff claims to have been subjected to sex-based discrimination by defendant throughout her career. She claims discrimination in having had to start as a secretary, having received less pay than men with equal experience and responsibility, and having been deprived of promotional opportunities. Plaintiff further claims that as a result of pervasive sex-based discrimination by defendant, other female employees have suffered similar treatment.

By its nature, the claim of plaintiff alleging discrimination against women in terms and conditions of employment is an appropriate one for a class action. Determining the composition of the class, however, i. e. the parameters of the group that has a common claim typified and adequately represented by plaintiff, presents substantial difficulties in this case.

### 1. Contentions of the Parties.

Plaintiff seeks to represent a class composed of

"all women employed by Foremost-McKesson, Inc., at its corporate headquarters (One Post Street and 650 Post Street, San Francisco) after January 1, 1974."

The parties agree that the time period is properly limited to women who could have filed timely EEOC charges when plaintiff's charge was filed. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3rd Cir. 1975).

Approximately 280 women are employed at the San Francisco headquarters complex (although it comprises two addresses, defendant raises no objection to its being treated as a single location). It houses the corporate staff and the headquarters of three of defendant's operating divisions. The corporate staff employs 36 women in exempt and 106 in nonexempt positions. The division headquarters each employ

women in exempt positions (ranging from one to twelve) and in non-exempt positions (ranging from two to sixty two). A fourth division, which has its headquarters in New York, employs one non-exempt female at the San Francisco office.

The claims which plaintiff asserts to be common to the class are the following:

 a. defendant's policy of excluding pregnancy and maternity from its disability leave program;

 b. defendant's policy against open posting of vacancies in management level jobs;

 c. defendant's practice of using women principally in lower paying jobs; and

 d. defendant's practice of paying women less than men for doing substantially similar work.

 The substance of the dispute between the parties is whether employment conditions for exempt and non-exempt positions and for employees of the different operating divisions and the corporate staff are sufficiently similar so as to permit treatment of these claims as common to all members of the alleged class and of plaintiff's claim as typical.[24]

Defendant contends that exempt and non-exempt employees are not similarly situated with respect to hiring, promotion, salary structure, and supervision. Defendant further contends that employees of the different operating divisions, alleged to be largely autonomous, and of the corporate staff are subject to different policies and practices with respect to placement, compensation and other employment conditions.

By applying the foregoing process of separation, defendant arrives at a group of 36 exempt females (including plaintiff) employed on the corporate staff. They in turn are said not to be subject to class treatment

---

**24.** The Court rejects defendant's claim that plaintiff, having never required or sought leave for pregnancy related conditions, lacks standing to attack the disability leave program. As a woman of child-bearing age, if for no other reason, plaintiff is certainly "aggrieved" within the meaning of the act, by a policy which may be discriminatory in respect of pregnancy or

maternity benefits. 42 U.S.C. § 2000e–5; *Waters v. Heublein Inc.*, Nos. 74–2870, 74–2871, 547 F.2d 466, pp. 469, 470 note 1 (9th Cir. Nov. 12, 1976). We do not thereby imply any view on the merits of the claim. Cf. *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).

because of the high degree of discretion and individual judgment involved in the jobs, requiring individualized treatment.

Plaintiff responds by pointing first to the interests shared by exempt and non-exempt women: all work at the same physical location, their work and rates of compensation overlap, all are subject to the pregnancy and maternity leave policy and the non-posting of management openings, and women in non-exempt positions are on occasion promoted to exempt positions.

As to the shared interests of operating division and corporate staff employees, plaintiff argues that most significant decisions with respect to the creation of positions, promotions and compensation are made at the corporate level for the entire corporation, that the nature of the work performed by women employees of the divisions and the staff is functionally similar, that employees are transferred among divisions and staff, and that certain important policies apply company-wide.

Defendant argues that plaintiff does not have a claim typical of non-exempt employees and cannot adequately represent the claims of non-exempt women whose interests are different and who in part are in fact supervised by plaintiff.

Plaintiff responds that her supervisorial duties are limited to three non-exempt women and, having in the past been non-exempt, she is particularly qualified to represent such women. She points to her diligence and sacrifice in prosecuting this action as further evidence of adequate representation.

### 2. *Discussion.*

This case presents in stark relief the conflict between plaintiff's "across the board" approach and defendant's "divide and conquer strategy." Unquestionably, plaintiff has presented broad issues of possible discrimination which are properly the subject of a Rule 23(b)(2) class action. The question remains, however, whether the composition of the class proposed by plaintiff will, as the Ninth Circuit put it, "affect the nature of an effective presentation of their

claims . . ." *Gibson v. Local 40, Supercargoes and Checkers ILWU*, 543 F.2d 1259, 1264 (9th Cir. 1976).

This case is different from cases such as *Johnson v. Georgia Highway Express Inc.*, 417 F.2d 1122 (5th Cir. 1969), where the simplistic if not brutal form of racial discrimination alleged lent itself to across-the-board class treatment. Yet even there, Judge Godbold's opinion warns against the potential unfairness of overbroad classes to absent members. (417 F.2d 1122, 1126)

In this case we are dealing with various individualized situations which may be subject to subtle and subjective differentiations. That is not to say that discrimination, if it is practiced, is less invidious for being subtle. It does mean, however, that the existence and scope of common claims, the typicality of the representative claim and the adequacy of the protection of the interests of absent members is far more difficult to determine.

It appears sufficiently from the record, however, that there are issues, particularly the pregnancy and maternity disability coverage and the alleged practice against posting vacancies in management jobs, which give rise to common claims on the part of plaintiff and the alleged class, that plaintiff may be able to adequately represent the class or some part of it, that joinder of all members may be impractical, and that therefore a tentative and conditional determination that the action may proceed as a class action is warranted.

It also appears from the record, however, that substantial disputes exist with respect to issues relevant to class determination. As a result there may be questions concerning the scope of common questions, the degree of typicality of plaintiff's claim and whether under all the circumstances plaintiff will be able to fairly and adequately protect the interests of all of the persons included in the class she proposes. In those circumstances the Court believes that in order to make a determination beyond the tentative and conditional determination made here, it is in need of "feedback from

the class members themselves." See, *Arey v. Providence Hospital*, 55 F.R.D. 62, 70–72 (D.D.C.1972).

Although this is a (b)(2) action and notice to the class members is not required, Rule 23(d)(2) authorizes the Court to require the giving of notice for the very purposes for which it is needed here, i. e. "for the protection of the members of the class or otherwise for the fair conduct of the action."

■■ The giving of such notice in this case is appropriate and proper inasmuch as a sufficient showing has been made to support a tentative class action determination under Rule 23(c)(1). Cf. *Pan Am. World Airways Inc. v. U. S. Dist. Ct.*, 523 F.2d 1073, 1078–1079 (9th Cir. 1975). The Court believes that the responses to the notice to the tentative class will enable it to discharge its various obligations under Rule 23(c)(1) and (d) in a more informed fashion. In particular, the Court expects the responses to the notice to disclose more accurately and objectively than is otherwise possible the extent to which there are common claims, the nature of such claims, and whether plaintiff's claim is typical, the practicability or impracticability of joinder, and whether plaintiff can be expected fairly and adequately to protect the interests of absent members. Should the responses to the notice disclose that the present tentative determination was not justified, Rule 23 authorizes the Court to change that determination either by revising the class definition or by determining that the action may not be maintained as a class action.

Accordingly, plaintiff's counsel is directed to prepare a proposed form of notice for transmission to class members in the form of· a notice from the clerk of this Court. The form shall first be submitted to counsel for defendant for comment and then to the Court for approval. The notice shall briefly describe the pending action and shall inform each class member that, if she has a related claim she wishes to assert, she may complete and return the attached claim form to the Court. That form shall call for (1) the title and description of her job and whether it is staff or division and clerical,

technical, administrative or managerial (and exempt or non-exempt); (2) the nature and detail of any claim related to the action which she believes she may have and wishes to assert; and (3) whether she desires to join the class and be represented by plaintiff, to intervene in her own right, or not to participate in the action.

■■ As it happens, plaintiff has previously offered to give notice at her expense to the members of the class in connection with her companion claim under the Equal Pay Act. (29 U.S.C. §§ 206(d), 216(b)) Under that act, an action may be maintained "in behalf of [plaintiff] . . . and other employees similarly situated." However, the statute further provides that "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." (29 U.S.C. § 216(b)) Thus, an Equal Pay Act claim cannot be maintained as a Rule 23 class action. Plaintiff proposes and defendant opposes the giving of notice of this claim to persons so as to give them an opportunity to join as plaintiffs. Whether such notice is to be given appears to be within the discretion of the Court.

■■ Because the Court is of the view that on the present state of the record, it is necessary that notice be given under Rule 23(b)(2) for the protection of members of the alleged class with respect to the Title VII claim, and plaintiff has agreed to give notice at her expense, the Court believes that fairness to the affected employees warrants advising them of the pending equal pay claim. This case differs from the cases relied on by defendant. *Cherner v. Transitron Electronic Corp.*, 201 F.Supp. 934 (D.Mass.1962), a case decided before the 1966 amendments to Rule 23, was a spurious class action; it appears that the judgment in that action, unlike a judgment in the instant case, would not have bound absent parties. It is clearly distinguishable on that ground alone. In *American Finance System Inc. v. Harlow*, 65 F.R.D. 94 (D.Md. 1974), the court in its discretion determined that no notice of the 23(b)(2) class action

needed to be given, and denied also the request for separate notice of the Equal Pay Act claim. But there, class members appeared to have had prior notice of the action as a result of a proposed settlement.

Accordingly, the Court finds that the requirements of Rule 23(a) and (b)(2) have been satisfied and determines that, subject to the conditions and limitations discussed above, the action may be maintained as a class action on behalf of a class consisting of all women employed by Foremost-McKesson Inc., at its corporate headquarters (One Post Street and 150 Post Street, San Francisco) after January 1, 1974, on the condition that appropriate notice shall promptly be given to all class members at plaintiff's expense in a manner consistent with this opinion and to be approved by the Court, and subject to further determination by this Court following consideration of the responses to such notice. In view of the disposition of this motion, ruling on the request for bifurcation is deferred.

A status conference will be held in this action on March 11, 1977 at 9:30 a. m.

V. *Grohal v. Stauffer Chemical Company Incorporated—No. C–74–1270 WWS*

*Jackson v. Stauffer Chemical Company Incorporated—No. C–76–0079 WWS*

Patricia J. Grohal was employed by defendant as a teletype operator from October 1, 1971 until March 11, 1974 when she was allegedly wrongfully terminated. She sues on behalf of a class of women who were employed by defendant at its San Francisco office during the same time period as plaintiff and who have been and continue to be or might be adversely affected by the practices complained of. The practices complained of involve discrimination against women in connection with placement, promotion, transfers, training and pay. Plaintiff seeks injunctive relief and back pay (but not reinstatement).

Cassandra Jackson is a black female who was employed by defendant as a clerk-typist and secretary from September 4, 1973, until February 7, 1975, when she was al-

legedly wrongfully discharged. Plaintiff charges generally discrimination on the basis of sex and race in conditions of employment. She sues on behalf of a class of all black and female persons employed or who might be employed by defendant at its facilities in California who are or were or might be adversely affected by the practices complained of. Jackson also seeks injunctive relief and back pay but not reinstatement.

Although the parties' memoranda have presented us with little information relevant to the Rule 23(a) and (b) criteria, it is possible to discern the following.

In the first place, it appears sufficiently that women employed at defendant's offices at 636 California Street and perhaps also at One Embarcadero Center in San Francisco may have a common claim with respect to sex-based discrimination in connection with promotions and pay. The papers suggest that promotion criteria may be so subjective that, in connection with a possible practice of not posting higher level vacancies, they may serve as a vehicle for discrimination. There may also be a question whether women, compared to men, receive equal pay for equal work. Obviously this is not a determination on the merits but merely a finding that, on the basis of the record before the Court, such common claims may exist.

Second, it appears that defendant is a highly diversified company with operations at numerous locations. We are not told the nature of the operations at the two San Francisco locations nor of the relevant conditions of employment which may tend to unify or divide the employees there with respect to class determination. It is quite clear, however, that on this record any class represented by plaintiffs could not extend beyond the two San Francisco locations. Inasmuch as more than three hundred women are employed there, the numerosity requirement is met.

Plaintiffs seek general injunctive relief which would be beneficial to the entire class. Their status as former employees, as heretofore discussed, does not in and of

itself preclude their claim from being typical nor the fair and adequate protection of absent members of the class. Their attorneys appear to be qualified to represent them.

Plaintiff Jackson, a latecomer to this controversy, adds nothing to the Grohal claim except its expansion to include blacks and all of defendant's California facilities. No showing has been made of any common claim on behalf of blacks or on behalf of any state-wide class of employees.

■ Accordingly, the showing made is adequate to permit the Court to find that the requirements of Rule 23(a) and (b)(2) have been satisfied in the *Grohal* action and to determine that, subject to the conditions and limitations discussed, that action may be maintained as a class action on behalf of a class consisting of all women employed by Stauffer Chemical Company at its San Francisco offices at 636 California Street or One Embarcadero Center after May 30, 1972, on the condition that appropriate notice shall promptly be given to all class members as hereinafter discussed, and subject to further determination by this Court following consideration of the responses to such notice. Plaintiff Jackson may join plaintiff Grohal as a representative plaintiff for the above class.

For the reasons discussed in detail by the Court in *Mathison v. Foremost-McKesson, Inc.*, above, this too is an appropriate case for requiring that notice be given to the members of the class at plaintiff's expense before further action is taken by the Court under Rule 23(c)(1). The memoranda of the parties do not indicate any objection to such notice. The responses to the notice will enable the Court to make a more informed examination of the class with respect to such questions as its limitations to certain occupational classifications, the nature and extent of any common claims, and the adequacy of representation.

The notice shall be in form from the clerk of this Court, shall briefly describe the pending action and shall inform each class member that if she has a related claim she wishes to assert, she may complete and return the attached claim form to the Court. That form shall call for (1) the title and a description of her job and whether it is clerical, technical, administrative or managerial (and exempt or non-exempt); (2) the nature and detail of any claim related to the action which she believes she may have and wishes to assert; and (3) whether she desires to join the class and be represented by plaintiff, intervene in her own right, or not participate in the action.

Counsel for plaintiff shall submit the proposed form of notice to defendant's counsel for comment and to the Court for approval.

A status conference will be held in this action on March 11, 1977 at 9:45 a. m.

## VI. *Sandoval, et al. v. Moore Business Forms, Inc.—No. C–74–2558 WWS*

This is an action by two employees of defendant charging generalized discrimination in hiring, promotion, and other terms and conditions of employment. Plaintiff Sandoval is a white female employed as a part-time clerk at defendant's Napa sales office. Plaintiff Thompson is a black male who alleges that he was denied employment at defendant's divisional headquarters in Oakland. These plaintiffs were later joined by Wagner, a black female who worked at defendant's Emeryville production facility until shortly before it closed in 1975, and Norman, a black male most recently employed at defendant's San Leandro distribution center.

Plaintiffs claim to represent a class composed of all past, present and future female and racial minority employees of and applicants and persons who were discouraged from applying for employment with Moore in the State of California and who have been, or may be discriminated against on the basis of their race, color, national origin or sex with respect to recruitment, hiring, assignment, compensation, promotion, transfer, training, discipline, discharge and with respect to any other terms and conditions of employment, by virtue of Moore's unlawful employment acts, practices and policies in the State of California.

Each of the four persons claiming to be representatives of a class has a different claim: Sandoval claims that defendant failed to transfer her to a full time clerical or sales position at the Napa sales office; Thompson claims that he was denied an employment application at Oakland headquarters; Wagner claims that she was laid off from a clerical job at the Emeryville production facility three months before it closed down; and Norman claims that he suffered discrimination in promotion and transfer at the San Leandro distribution center.

The only common feature of these claims is that they involve alleged discrimination by Moore. They involve a white woman employee, a laid-off black woman employee, a black male employee now on disability leave, and a black male would-be applicant, in different occupations at different locations under different circumstances. Although plaintiffs, in the nearly two years that the class determination question has been pending, have had abundant opportunity to attempt to demonstrate the existence of questions common to the class, they have totally failed to do so. There are hints in the pleadings that defendant may pursue practices or policies that could be found to constitute unlawful employment practices, but plaintiffs have not established either their probable existence or the scope of their application to any particular class.

■ The requirements of Rule 23(a) and (b)(2) assume particular significance in a case of this nature involving an employer having a widely dispersed and highly diverse work force. The pleadings disclose that Moore is a company with operations in all fifty states and several foreign countries. The Pacific Division covers 13 Western states and has 2,600 employees. Dispersed through California are five manufacturing plants, two distribution centers, approximately fifty sales offices, and the divisional headquarters in Oakland. The California workforce comprises numerous different occupations, including, among others, office and clerical workers, sales persons, technicians, professional printers and other craftsmen and operators, truck drivers, warehouse employees, and supervisors and managers. There are part-time and full-time employees. Some employees are represented by labor organizations and approximately eight separate collective bargaining agreements are in force. The size of the workforce at each location varies from three to four at small sales offices to over 200 at the Oakland headquarters.

■ Plaintiffs ignore these facts. They have made no effort to establish that all or part of the California workforce is subject to similar conditions of employment or that particular discriminatory employment practices are applied to that group. There is no reference to the defendant's management organization or to the manner in which personnel policies or practices are administered. In short there is a total failure to demonstrate the existence of common questions.

■ For the same reasons, plaintiffs have also failed to demonstrate that their claims are typical of the claims of any class. On the contrary, the nature of the claim described above suggests that they are unique to the named plaintiffs.

■ It is no answer for plaintiffs to argue that an across-the-board class determination is appropriate. Such an approach might be permissible in a case where plaintiff can make the showing required by Rule 23(b)(2) that defendant has acted or refused to act on grounds generally applicable to the class and can show the existence of particular unlawful employment practices and their across-the-board exclusionary effect. See, e. g. *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40 (5th Cir. 1974), *cert. granted,* 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976). But plaintiffs have made no such showing here. There is no demonstration that minorities or women have been excluded from employment nor does plaintiffs' discovery appear to have ferreted out evidence of any demonstrable unlawful employment practice or policy that could support a common and typical class claim. Cf. *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir. 1975).

Aside from all of these deficiencies, plaintiffs have not demonstrated that they will fairly and adequately protect the interests of the class. Should the action go forward on behalf of the proposed class and terminate in a judgment adverse to plaintiffs, all of defendant's past, present and future employees in California will be barred from further relief. See, *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 311 (6th Cir. 1975). In view of the wide dispersion of the members of the class, the broad range of their occupations, employment conditions and interests, and the inability of plaintiffs' counsel to present an effective showing under Rule 23(a) and (b), the Court cannot find that Rule 23(a)(4) has been satisfied. See, *Gibson v. Local 40, Supercargoes and Checkers, ILWU*, 543 F.2d 1259 (9th Cir. 1976).

██ Whether one or more appropriate representatives of defendant's employees may in the future be able to present a claim on behalf of a class which meets the requirements of Rule 23 cannot be determined on this record. For the reasons stated, the Court finds that plaintiffs have failed to establish that the requirements of Rule 23(a) and (b)(2) have been satisfied and determines that the action may not be maintained as a class action.

A status conference will be held in this action on March 18, 1977, at 9:00 a. m.

## VII. *Smith v. Crescent Jewelers, et al.—* No. C–74–0224 WWS

This is an action brought on behalf of black and other racial or ethnic minority females alleging unlawful employment practices in connection with hiring, compensation, training and promotion. Plaintiff seeks general injunctive relief on behalf of the class and back pay for herself. A tentative class determination was made by Judge Renfrew on November 3, 1975, but both sides have moved for a redetermination.

The record discloses that plaintiff was hired in August 1968 as a full-time credit clerk at defendant's Washington Street store in Oakland. Defendant is a family-owned business operating 14 stores in the San Francisco Bay Area which sell jewelry and household goods. It has approximately 119 permanent full-time employees, but, because of the seasonal peaks of its business, employs large numbers of temporary and part-time sales persons.

Plaintiff had worked for about three years as a cashier and credit clerk before going to work for defendant. In November 1971, plaintiff was promoted to the position of acting credit manager and in December, when she logged considerable overtime, her compensation increased from about $420 to $1,000. At the conclusion of the 1971 Christmas season, plaintiff's compensation declined to $775, and shortly thereafter her position was changed to collection manager. In May 1972, her employment was terminated. In June 1972, she was rehired as a credit clerk at $750 per month. When that position was eliminated, plaintiff was offered but declined another position at a different store.

Plaintiff contends that she was subjected to sex or race based discrimination with respect to compensation and promotion, and that she was wrongfully terminated. She seeks to maintain this action on behalf of a class comprising

"[e]very ethnic or racial minority female applicant, employee or ex-employee of defendants, or any of them, who under 42 U.S. Code § 2000e–5 of the Civil Rights Act of 1964, as amended in 1972, could, on or after the 300th day prior to April 27, 1973 have timely filed a charge against defendants, or any of them, with the U.S. Equal Employment Opportunity Commission, alleging sex-based or race-based discrimination against her, and who applied for employment and/or who was employed by defendants, or any of them, at any time on or after the 300th day prior to April 27, 1973."

The claims asserted by plaintiff are in essence

"that minority female employees were paid less than men in equal positions or doing equal work, and that minority females were denied hiring, training and

promotional opportunities afforded to men."

The initial problem concerns the definition of a class to which these claims can be said to be common. Plaintiff and defendant have each presented elaborate yet simplistic statistics said to support opposing conclusions concerning race and sex-based distinctions in the composition of the work force and its compensation. It is neither feasible nor necessary to resolve the conflicts posed by these statistics. The contradictions and confusion generated by the parties' statistical approach point up the inherent difficulty of class treatment of this case.

Although the materials filed by the parties are far from clear, it appears that the defendant's workforce is composed of groups having different terms and conditions of employment and different interests. First, there is a group of permanent full-time employees, consisting of salaried management employees and hourly-paid non-management personnel. Because of the difference in working hours and responsibilities, their compensation cannot be compared by reducing it to hourly earnings. The non-management personnel breaks down into two groups, employees under several different collective bargaining agreements the terms of which generally make it uneconomical to have these employees work overtime, and non-organized employees who do work overtime. Because of the resulting difference in compensation totals, comparisons based on hourly earnings are of limited utility.

In addition, certain classes of employees receive incentive pay based on performance. Credit employees receive incentive pay for returning credit qualified customers. Sales employees receive a variety of incentive payments including bonuses and commission splits. Sales persons begin as Class "B" employees and may be promoted on the basis of performance to Class "A" employees whose compensation is higher. Sales employees whose productivity is below standard are terminated. Finally, there appears to be a large group of temporary or part-time personnel hired to help during peak periods. The pleadings do not disclose the terms and conditions under which they are employed.

Plaintiff has made no effort to show which of these functional groups have sufficiently common terms and conditions of employment to enable the Court to find the existence of common claims. Her statistics are so arbitrary and confusing as to create serious doubt that any such showing is possible.

Aside from her failure to demonstrate the existence of a claim common to an identifiable class, plaintiff has a serious problem of typicality. The facts alleged to support her claim reveal what appears to be a unique situation. Plaintiff started as a clerical employee, was promoted to a management position, appears to have had difficulties on the job (whether they were of her or the defendant's making is not material here), changed jobs, encountered further difficulties, was offered another position but turned it down and left defendant's employ. Without passing on the question whether plaintiff may have been a victim of discrimination, the facts of her claim are so unique that it is difficult to regard it as being typical of other employees of defendant, particularly non-management and temporary or part-time employees. See, *Gibson v. Local 40, Supercargoes and Checkers, ILWU*, 543 F.2d 1259 (9th Cir. 1976).

Finally, plaintiff seeks to represent only minority females, a judgment which perhaps reflects her feelings of antagonism toward white persons documented in the record. Inasmuch as plaintiff argues that defendant's use of temporary and part-time employees is a practice which discriminates against minorities, she would not be an adequate representative of those persons and they must be excluded. Whether the remaining group would be so numerous as to make joinder impractical is doubtful.

 It may be that plaintiff can identify and demonstrate the existence of unlawful employment practices or policies by defendant which could give rise to a common claim on the part of a definable class of

persons. On the present record, however, plaintiff has failed to demonstrate that the requirements of Rule 23(a) and (b)(2) have been satisfied. For the reasons stated, the Court determines that the action may not be maintained as a class action.

A status conference will be held in this action on March 18, 1977 at 9:15 a. m.