### Richard B. SAGERS
### v.
### YELLOW FREIGHT SYSTEM, INC., et al.
### Civ. A. No. 14510.

United States District Court,
N. D. Georgia,
Atlanta Division.
July 21, 1972.

Howard Moore, Jr., and Peter E. Rindskopf, Atlanta, Ga., for plaintiff.

Jack Greenberg and William Robinson, New York City, for defendants.

## ORDER

FREEMAN, District Judge.

This is a class action for a declaratory judgment, injunctive relief and damages for alleged racial discrimination in employment. Jurisdiction is asserted to exist pursuant to 28 U.S.C. § 1343 to remedy the alleged deprivation of rights secured under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, and has not been challenged. Named as defendants are a trucking company (Yellow Freight), a local union (Local 728) and the regional and international Teamsters organizations to which the local belongs. The union defendants have moved to dismiss the class action aspects of the case and to dismiss.

## I—MOTION TO DISMISS THE CLASS ACTION ASPECTS

 The labor defendants have moved to dismiss the class action aspects of the action on the grounds that the requirements of Rule 23(a), Fed.R.Civ.P., have not been met. It is apparently not disputed that this action satisfies the provisions of Rule 23(b)(2). As will be noted below, any discussion of the appropriateness of the class action necessarily involves consideration of the proper definition of the class. In other words, some of the objections to the class action, to the extent they are deemed valid, may be dealt with by limiting the boundaries of the class in order to come within Rule 23(a).

Plaintiff, an employee of defendant at its Marietta Terminal and a member of Local 728, sues on behalf of himself and all other black employees of defendant to remedy alleged racial discrimination. In particular, the complaint alleges that defendant Yellow Freight had a prior policy of hiring only whites into the well-paying job classification of over-the-road driver. It is further alleged that the present policies of Yellow Freight and the labor defendants in restricting transfers into the over-the-road jobs perpetuate the prior racial discrimination and therefore are in violation of Title VII. The plaintiff and defendant Yellow Freight ask this court to rule this action a class action on behalf of all black employees of Yellow Freight nationwide or at least throughout the Southern Conference of Teamsters. The labor defendants request that the court limit the action to plaintiff's individual claims or define the class narrowly, that is, as comprising only the employees of Yellow Freight who are members of Local 728 and work in the Marietta Terminal.

Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### A. Common Questions of Law or Fact

All defendants concede that the numerosity requirement of Rule 23 is met. The labor defendants, however, argue that there are not questions of law and fact common to the class. In this regard defendant unions emphasize the individual and probably unique aspects of plaintiff's complaint. Plaintiff, who has been employed by Yellow Freight (and its predecessor Watson-Wilson) as a city employee since 1955, first as a dockman and then as a city driver, was on or about November 6, 1969, employed by Yellow Freight at its Athens, Georgia, terminal as an over-the-road driver. Plaintiff's request for a leave of absence from his job as a city driver in order to have a trial period as an over-the-road driver was allegedly denied, although, according to plaintiff's allegations, a

leave of absence was granted to at least one white employee for the same purpose. After approximately eight days as an over-the-road driver, plaintiff was allegedly advised by his doctor that continuation in that new position would be adverse to his health. Plaintiff returned to his former employment as a city driver at the Marietta terminal but lost fourteen years of accumulated seniority for purposes of bidding and lay-offs.

The labor defendants argue that the plaintiff's complaint is specifically directed to the refusal to grant him a leave of absence upon transfer and that his individual claim presents issues of law and fact different from the challenge of the class as a whole to the barriers to transfer. However, the problems which plaintiff encountered upon transfer to over-the-road driving illustrate the obstacles to transfer which are allegedly discriminatory in the context of Yellow Freight's past employment practices. There are thus questions of law and fact which plaintiff's claim and the claim on behalf of the class have in common.

Another aspect of the union's argument that there do not exist issues of law or fact common to the class pertains to the contractual agreements under which the members of the class and other employees of Yellow Freight are employed. The employees of Yellow Freight nationwide are represented by ninety-four different local unions affiliated with the Teamsters International; each of those locals has made a separate contract with Yellow Freight. According to the labor defendants, the court would have to deal with each contract individually in examining the transfer and seniority practices of Yellow Freight.

In considering the contracts between Yellow Freight and the local unions, the court cannot close its eyes to the realities of the situation. It is quite true that each local union has a separate contract with Yellow Freight. It is likewise true, however, that such contracts are negotiated on a nationwide basis between the Trucking Employers, Inc. and the National Over-the-Road and City Cartage Policy and Negotiating Committee, representing the local unions. As the labor defendants themselves point out, all the local unions sign identical powers-of-attorney permitting the National Negotiating Committee to act on their behalf. The result of the negotiations has been, since 1964, a nationwide contract for the trucking industry, the National Master Freight Agreement. While the National Master Freight Agreement must be ratified by the local unions, such ratification is generally a mere formality. In fact, the agreement goes into effect and binds all local unions throughout the nation once the agreement is accepted by a *majority* of the local union members voting on the agreement, according to the provisions of the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

While there is a separate formal contract between each local union and Yellow Freight, in effect the National Master Freight Agreement is published in pamphlet form and accepted nationwide, with a blank in which the number of each individual local union is inserted. The nationwide character of the standard contract makes it clear that any questions of law regarding that agreement are common to employees of Yellow Freight nationwide.

However, in addition to the National Master Freight Agreement, Yellow Freight is a party to numerous supplements to the nationwide agreement, which supplements generally cover a certain geographic area and a certain category of employees. For instance, covering the Southern Conference Area alone, there are supplements dealing separately with over-the-road employees, local freight forwarding pickup and delivery employees, local freight forwarding ga-

rage employees, and local freight forwarding office clerical employees. There are similar such agreements covering the Western States Area and the Central States Area. Although they are negotiated by the two parties who negotiate the nationwide agreement, these supplements may vary in their terms from one conference area to another. Plaintiff and Yellow Freight, both of whom urge this court to entertain a nationwide class action, argue that the restrictions on transfers and the seniority provisions operate in an identical manner throughout all the geographic areas, despite the existence of the separate and sometimes different supplements.

While the basic structure of the separate lines of progression between over-the-road drivers and city drivers is common to all the supplemental agreements to which Yellow Freight is a party, it appears to the court that the supplemental agreements differ in certain details from one geographical area to another. For instance, the Central States Area Over-the-Road Supplemental Agreement provides that over-the-road drivers can bid for peddle runs if qualified. As peddle runs, or those which are within a radius of 75 miles of the home terminal and which do not exceed 150 miles round trip [See United States v. Central Motor Lines, Inc., 338 F.Supp. 532 (W.D. N.C.1971)], are generally covered by the supplemental agreements dealing with local and city drivers and dock workers, the Central States Area supplemental agreements allow a flexibility between job categories, at least in one direction, which is not provided for in the Southern Conference Over-the-Road Supplemental Agreement. While such a provision is admittedly not at the heart of the controversy presented by the present action, details such as that provision, dissimilar in the various geographical areas, might be significant in determining whether contract provisions restricting transfers discriminate against black city drivers, in determining whether

there is a valid business purpose for the strictly separate job categories of city and over-the-road drivers, and in fashioning relief should plaintiff and his class prevail on the merits.

In sum, while the court is not impressed by the labor defendants' formalistic argument that every local union has a different contract with Yellow Freight, it is clear that the supplemental agreements vary in substance from one geographical area to another. The nationwide agreement, ratified by each local Teamsters union, provides in Article 5, Section 1, that "The extent to which seniority shall be applied as well as the methods and procedures of such application shall be clearly set forth in each of the Supplemental Agreements." Thus the uniform national agreement allows each geographic area to adopt provisions regarding seniority. Such provisions may vary and do in fact, as noted above. Accordingly, the court holds that common contract provisions and therefore common issues of law exist as to the employees of defendant Yellow Freight which are employed under the Southern Conference supplements to the National Master Freight Agreement.

### B. Adequate Protection of the Interests of the Class

The labor defendants have strenuously argued that the individual plaintiff, because he was allowed to transfer to an over-the-road job, is not a member of the class which he seeks to represent and therefore cannot adequately protect the interests of the class. Much reliance is placed on the case of Huff v. N. D. Cass, 468 F.2d 172 (5th Cir. 1972), where the action was dismissed because of the court's finding that the individual plaintiff was not a member of the class which he sought to represent and thereby could neither assert nor protect the interests of the class. That case, however, is not applicable to the present action. *Huff* was grounded in the court's determination that the individual plain-

tiff had no maintainable charge of employment discrimination against the defendant. In the instant case, if the court should find that the past practices of Yellow Freight excluded blacks from over-the-road driver jobs and if the court should find that the present restrictions on transfers from city driver to over-the-road driver perpetuate that discrimination, then there is nothing on the record, as yet, which indicates that plaintiff would not be entitled to some relief. Plaintiff's individual grievance grew out of the system which he alleges discriminates against an entire class.

The court has above pointed out that there are differences in the seniority provisions applicable to the various geographic areas in which Yellow Freight has terminals. Thus, employed under the Southern Conference supplemental agreement, plaintiff might not be able to represent adequately the interests of black employees of Yellow Freight employed under the Central or Western States supplemental agreements. For this reason as well as the reason stated in the discussion regarding the common questions of law and fact, the court deems it appropriate to limit the plaintiff class to the Southern Conference employees.

Aside from the extraordinary situation presented by *Huff,* the proper and controlling standard with respect to adequacy of representation is still the standard set forth in Johnson v. Georgia Highway Express, 417 F.2d 1122, 1125 (5th Cir. 1969), as follows:

In this regard the standard to be applied is not whether appellant will prevail, but is as stated by Judge Medina:

An essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collu-

sive suit or that plaintiff has interests antagonistic to those of the remainder of the class. Eisen v. Carlisle and Jacquelin, 2 Cir. 1968, 391 F.2d 555.

Under these guidelines plaintiff is fully able to represent the interests of the class. Plaintiff's counsel, Elizabeth Rindskopf of Moore, Alexander & Rindskopf and Jack Greenberg and Morris Baller of the NAACP Legal Defense Fund are well-experienced and highly competent in the field of employment discrimination and civil rights. There has been no indication whatsoever that plaintiff and Yellow Freight are in collusion and plaintiff's interests are apparently in no way antagonistic to those of the remainder of the class.

For the reasons discussed above, the motion to dismiss the class action aspects of the case is denied. However, consideration of the motion of the labor defendants has apprised the court of the need to define the class in light of facts revealed through the continuing discovery. The appropriate definition of the class must deal in some manner with the assertion of the labor defendants that there are numerous other employment discrimination suits against Yellow Freight which make it impossible for this action to proceed as a nationwide or area-wide class action. However, of those suits, only two are pending within the Southern Conference area. Of those outside the Southern states area, only one, Stinson v. Yellow Freight System, No. C–71–2103, filed November 2, 1971, in the Northern District of California, is a class action and, according to defendant Yellow Freight, that action does not present the prior discrimination and seniority transfer issues. Of the two cases within the Southern states, Herrera v. Yellow Freight, Inc., No. SA–71–CA–296, filed October 19, 1971, Western District of Texas, has apparently not yet been determined a class action and at any rate was filed after the present action. In Gray v. Yellow

Freight System, No. 3–4028–C, filed July 23, 1970, in the Northern District of Texas, the maintainability of the class action has likewise not yet been determined. In that action, according to Yellow Freight, plaintiff seeks to represent a class composed of all Dallas employees of Yellow Freight. If that case is allowed as a class action, it would be proper to exclude employees of the Dallas terminal from the class in the instant case.

■ This action shall be maintained and shall proceed as a class action, which class shall include all black employees of Yellow Freight, excluding office and supervisory personnel, who are employed within the area covered by the Southern Conference of Teamsters, that is, the states of Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Oklahoma, Tennessee and Texas. The definition of the class set forth today may be, of course, modified as required pursuant to Rule 23(c)(1).

## II—MOTION TO DISMISS

A. Motion to Dismiss the Southern Conference of Teamsters and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America

■ These two defendants, hereinafter the Southern Conference and the International, seek to dismiss the complaint against them on the grounds that they are not parties to the contracts through which the challenged seniority provisions are enacted. The first page of the National Master Freight Agreement, which is adopted as the contract between each Teamsters local and Yellow Freight, sets forth as parties to the contracts the employer (for instance, Yellow Freight), the National Over-the-Road and City Cartage Policy and Negotiating Committee, and the various local unions, which are affiliated with the International. However, while neither the International nor the Southern Conference is a party to the National Master

Freight Agreement, the Southern Conference is a formal contracting party in the various Southern Conference area supplemental agreements. It is thus clear that the Southern Conference is a proper defendant in this action and the motion to dismiss is, as to the Southern Conference, denied.

■ While the rule under which the International seeks to be dismissed has not been set forth, it seems that the motion to dismiss as not a proper party must, in effect, be a motion to dismiss for failure to state a claim. It is well established in the Fifth Circuit that such motions are looked upon with disfavor and should be granted only reluctantly. This view is adamantly stressed by Judge Brown in Cook & Nichol, Inc. v. Plimsoll Club, 451 F.2d 505 (5th Cir. 1971);

> Over and over and over again—but apparently not often enough—this Court has stated, explained, reiterated, stressed, rephrased, and emphasized one simple, long-established, well-publicized rule of Federal practice: a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim. At 506.

Assuming, as one must for purposes of this motion, that plaintiff will be able to prove the essential allegations of his complaint, the question whether plaintiff would then be entitled to relief against the International must depend upon the factual and contractual relationships between the International and the other defendants and between the International and the policies which are here under attack. On a motion to dismiss the burden is on the International to establish that it should be dismissed as a defendant.

The International argues that the local unions are autonomous and that thus their actions or contracts cannot be at-

tributed to the International with which they are affiliated. The International has cited cases for the proposition that the local unions are autonomous;[1] however, such cases deal with attempts to effect service of process upon the International through service upon the local union and thus have no direct bearing on the instant case where jurisdiction and service of process have not been challenged.

As plaintiff has stressed, "[T]he provisions of the Teamsters constitution do not, standing alone, directly create agency but do grant to the national body broad if not plenary powers of supervision and control over the local affiliates." Barefoot v. International Brotherhood of Teamsters, *supra*. While it appears that the International has little control over the local in matters of local finances and local officers, it is argued that the International exercises almost total control over the negotiation of the National Master Freight Agreement. This argument is buttressed by a careful look at the nominally independent national Negotiating Committee which is a party to all the contracts relevant to this action. The Chairman of the Negotiating Committee is Frank E. Fitzsimmons, the General President of the International. Among the other Committee members are Murray W. Miller, the General Secretary-Treasurer of the International, Weldon L. Mathis, an International Vice President, and Joseph W. Margan, an International officer in charge of the Southern Conference Dallas office.

 Accordingly, the court holds that plaintiff has demonstrated sufficient connection between the International and the contracts here in issue to require that the International's motion to dismiss for failure to state a claim be denied.

## III—MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSIBLE PARTIES

 The labor defendants have further moved that the entire action be dismissed for failure to join all the local unions affected by this action which, according to the court's definition of the class, would mean all the local unions in the Southern Conference. Such locals are indispensible parties, it is argued, because the locals are parties to the various contracts involved. However, as discussed above, the International and the Southern Conference, both party-defendants, have extremely close ties with the locals and may be expected fully to represent the interests of the locals. Moreover, as was held in the similar case of United States v. Pilot Freight Carriers, Inc., 4 FEP Cases 472 (M.D. N.C.1972), what is at issue is not the rights of the locals but the seniority expectations of incumbent white employees of Yellow Freight who might be affected by any relief granted to the plaintiff class.

 The labor defendants also allege, however, that all the white employees of Yellow Freight who might stand to lose seniority or other rights are likewise indispensible parties without whom this action cannot proceed. The labor defendants rely in this regard upon Banks v. Seaboard Coast Line Railroad Co., 51 F.R.D. 304 (N.D.Ga.1970), in which Judge Moye held that the defendant labor unions, having both black and white members, could not fairly and adequately represent the interests of just its white members in a Title VII action against the employer and the union. However, whatever the factual situation in the *Banks* case, it is clear in the present action that the defendant union is vigorously asserting the rights of its white members. The numerous briefs

---

1. Barefoot v. International Brhd. Teamster, 424 F.2d 1001 (10th Cir. 1970), cert. den. 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed. 2d 257 (1971); Morgan Driveaway, Inc.

v. International Brhd. Teamster, 268 F.2d 871 (10th Cir. 1959), cert. den. 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152 (1960).

and other pleadings filed in this case belie any notion that the interests of the incumbent white employees are not being fully protected.

The motion to dismiss for failure to join indispensible parties, the local unions and the white employees, is denied. However, to ensure that the conduct of this action is fair to all concerned, as required by Rule 23(d)(2), the plaintiff is hereby ordered to prepare and file within twenty (20) days of the date of this order a notice of the pendency of this action. *See* United States v. Pilot Freight Carriers, Inc., *supra*; Johnson v. Georgia Highway Express, 417 F.2d 1122 (5th Cir. 1969). Within ten (10) days thereafter, the defendants are ordered to file any objection to the notice. The labor defendants are ordered to submit to the court a mailing list of all local unions within the Southern Conference. Defendant Yellow Freight is ordered to submit a mailing list of all Yellow Freight Terminals within the Southern Conference area. As the purpose of this notice is to apprise both the members of the plaintiff class and the incumbent white employees, the cost of sending one copy of the notice to each of the local unions, to be posted in a conspicuous place at union headquarters, and one copy to each Yellow Freight terminal in the Southern Conference, to be posted in a conspicuous place at the terminal, shall be apportioned equally between the plaintiff, defendant Yellow Freight, and the labor defendants.

In sum, the court has today denied the labor defendants' motion to dismiss the class action aspects of the case and defined the class as all black non-office and non-supervisory personnel within the Southern Conference of Teamsters; denied the motion of the Southern Conference and the International to dismiss; denied the motion to dismiss for failure to join indispensible parties; and ordered the plaintiff to file within twenty (20) days a proposed notice and ordered the defendants to file any objections thereto and mailing lists of all local unions and Yellow Freight terminals within the area covered by the Southern Conference of Teamsters within ten (10) days thereafter.

It is so ordered.