Edna T. HANNIGAN, on behalf of herself and all others similarly situated

v.

AYDIN CORPORATION.

Civ. A. No. 76–551.

United States District Court,
E. D. Pennsylvania.

Nov. 4, 1977.

504

Helen H. Cutner, Philadelphia, Pa., for plaintiff.

Kleinbard, Bell & Brecker, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by Edna T. Hannigan against her employer, Aydin Corporation, for alleged acts of sex discrimination in the compensation, terms, conditions and privileges of employment for female employees. Plaintiff has moved for certification of a class consisting of: (1) all past, present and future female employees of defendant except those who left defendant's employ on or before November 8, 1972, and (2) all past, present and future female job applicants except those who applied for employment with defendant on or before November 8, 1972. We will grant plaintiff's motion but limit the class as hereinafter described.

At the time plaintiff filed her complaint with the EEOC, she was employed at defendant's Vector Division plant in Newtown, Pennsylvania as a "labor grade 9" assembler. In early 1973 she had been assigned temporarily for eight months to a job in which she performed some of the duties of a higher-paying position in defendant's "RF Laboratory". At the end of that period, the defendant hired a male from outside the company for the lab position without affording Ms. Hannigan or any other female labor grade 9 employee an opportunity to qualify for a promotion to the lab position, and returned plaintiff to her labor grade 9 duties.

Plaintiff timely filed a sex discrimination charge with the EEOC naming "Aydin Vector Division" as respondent. In her EEOC charge, plaintiff alleged that she was performing essentially the same work as men who were a higher grade than she was and that neither she nor any other labor grade 9 employee, all of whom were female, was given an opportunity for promotion to the lab position. The EEOC District Director found reasonable cause to believe that sex discrimination occurred in the company's failure to offer plaintiff an opportunity for promotion. When conciliation efforts failed, the EEOC issued a right to sue letter. Plaintiff then timely filed suit in this court.

Plaintiff's complaint alleges "across the board" sex discrimination by Aydin Corporation against female employees. In particular, plaintiff asserts that defendant: (1) has a higher wage scale for male employees; (2) refuses to make promotional opportunities available to female employees; and (3) denies on-the-job training to female employees while making such training available to male employees. Plaintiff makes these allegations against the entire corporation, which includes plaintiff's employer, Vector Division, and seven other divisions of the corporation. In her motion for class certification plaintiff seeks for the first time to represent female job applicants as well as female employees.

Defendant objects to class certification on several grounds. First, defendant argues that Ms. Hannigan lacks standing to represent any class. Second, defendant asserts that the plaintiff's claim is unique and so personal that she cannot represent any class of employees. Third, defendant argues that due to statutory prerequisites of Title VII and the requirements of F.R. Civ.P. 23(a) and (b), plaintiff is unable to represent: (1) female employees outside plaintiff's department within Vector Division; (2) non-union employees at Vector Division; (3) job applicants; or (4) employees in divisions other than Vector Division. Finally, defendant maintains that the Title VII statute of limitations bars claims by past employees who left defendant's employ on or before March 8, 1973, rather than the cut-off date of November 8, 1972, asserted by plaintiff.

## I. STANDING

The constitutional requirement of standing mandates that a plaintiff have "such a personal stake in the outcome of the controversy" to warrant federal court jurisdiction. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The test of such an interest is "injury in fact", *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S.

150, 151–54, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), which requires plaintiff to allege that he or she has suffered "some threatened or actual injury" resulting from defendant's actions. *S. v. D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Taking a broad view of standing in Title VII cases, the Third Circuit has held that if the plaintiff "claims enough injury in fact to present a genuine case or controversy in the Article III sense, then he should have standing to sue in his own right and as a class representative." *Hackett v. McGuire Bros., Inc.*, 445 F.2d 442, 447 (3d Cir. 1971).

■ Defendant argues that plaintiff has not alleged an injury in fact. However, plaintiff's deposition and the EEOC charge, which are a part of the record, prove the contrary. Plaintiff asserts both that she was not adequately compensated and that she was discriminatorily denied promotional opportunities and on-the-job training. These allegations are sufficient to give plaintiff standing as individual claimant and as class representative.

## II. JURISDICTIONAL REQUIREMENT

■ Before an aggrieved individual can file suit in federal court, Title VII mandates that a private sector employee must file a charge with the EEOC to afford the EEOC an opportunity to obtain a conciliation agreement with the defendant-employer. 42 U.S.C. § 2000e–5(d), (f). Because of this jurisdictional requirement of exhaustion of administrative remedies, issues not explicitly raised in an EEOC charge have been challenged when later raised in a Title VII suit. Although the Third Circuit has not specifically addressed this problem, it has held that EEOC charges should be liberally construed when applying the jurisdictional requirements of Title VII. *Canavan v. Beneficial Finance Corp.*, 553 F.2d 860, 864 (3d Cir. 1977); *Wetzel v. Liberty Mutual Ins. Co.*, 511 F.2d 199, 202–03 (3d Cir. 1975), *vacated on jurisdictional grounds,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). Consistent with this view, other circuits have allowed the scope of federal complaints to extend either to any discrimination "like or related to" the allegations contained in the EEOC charges or to the scope of the EEOC investigation which can "reasonably be expected to grow out of" the EEOC charge. *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *Tipler v. E. I. duPont,* 443 F.2d 125, 131 (6th Cir. 1971); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

In determining what claims of discrimination are like or related to an EEOC charge, most courts will not require an overly technical compliance with the exhaustion rule. *Tipler v. E. I. duPont, supra* at 131; *Sanchez v. Standard Brands, Inc., supra* at 465. *Cf. Wetzel v. Liberty Mutual Ins. Co., supra,* 511 F.2d at 202–03. Courts have supported expansive interpretation of the scope of the EEOC charge on the grounds that: (1) Title VII is intended to have a broad remedial purpose; (2) EEOC complainants lack legal sophistication; and (3) judicial resources will be wasted if the court requires strict compliance with statutory exhaustion. *See, e. g., McBride v. Delta Air Lines, Inc.*, 551 F.2d 113, 115 (6th Cir. 1977); *Gamble v. Birmingham Southern RR Co.*, 514 F.2d 678, 688–89 (5th Cir. 1975). We concur with the liberal application of this rule and therefore conclude that in this case for the reasons stated below, the exhaustion requirement does not necessitate any further restriction of the class than is otherwise mandated by F.R.Civ.P. 23. *Piva v. Xerox Corp.*, 70 F.R.D. 378, 384 (N.D.Cal. 1975).

Plaintiff's EEOC charge raises allegations of discrimination in compensation and promotional opportunity for herself and other labor grade 9 female employees in her department at Vector Division. Her EEOC charge is directed only against "Aydin Vector Division." Defendant argues that the class must be restricted alternatively to female employees in plaintiff's department, to union employees or at least to employees in Vector Division.

■ We reject the first two proposed class limitations because it is reasonable to expect an EEOC investigation concerning

alleged class discrimination to scrutinize potential discrimination in the terms and conditions of employment for all females in a plant the size of Vector Division (175 employees, 75 females). In fact, the EEOC District Director had to investigate the employment decisions concerning union and non-union employees in order to resolve Ms. Hannigan's individual charge. We conclude that alleged discrimination against females in other positions at Vector is sufficiently similar to that experienced by plaintiff to have been a potential consideration in the EEOC's conciliatory efforts with the corporation.

 The inclusion in the class of employees from divisions other than Vector is a more difficult question, but we conclude that the Title VII exhaustion requirement does not by itself require the class to be limited. Since there was only one corporation involved in the EEOC charge, defendant Aydin Corporation cannot claim lack of notice of the EEOC charge. In fact, in its brief defendant concedes that the corporation is a proper defendant in this suit. We conclude that when a defendant has been given notice of allegations of discrimination against a class of employees, the protections afforded under F.R.Civ.P. 23 are sufficient to satisfy the jurisdictional requirement of Title VII. Any allegations of discrimination in the defendant corporation which satisfy the commonality and typicality requirements of F.R.Civ.P. 23(a) would necessarily be like or related to the discrimination alleged in plaintiff's EEOC complaint. Therefore, we shall look to the former requirements to determine the scope of the class.

### III. CLASS CERTIFICATION

 The plaintiff in a Title VII class action has the burden to demonstrate that the elements of F.R.Civ.P. 23(a) and (b) have been satisfied. But since employment discrimination proscribed by Title VII is necessarily based on a class characteristic, i. e., race, sex, religion or national origin, courts consistently have held that the requirements of Rule 23 should be applied liberally in order to vindicate the important public policy of equal employment opportunity advanced by Title VII. *Gay v . Waiters' and Dairy Lunchmen's Union,* 549 F.2d 1330, 1333–34 (9th Cir. 1977); *Romasanta v. United Airlines, Inc.,* 537 F.2d 915, 918–19 (7th Cir.), *cert. granted,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 340 (10th Cir. 1975); *Hackett v. McGuire Bros., Inc., supra* at 446–47.

The requirements of Rule 23(a) necessitate a showing of numerosity, commonality, typicality and adequacy of representation. In Title VII cases a unique body of law has developed concerning the requirements of commonality and typicality, two concepts which overlap and are usually discussed together. Most courts, including this one, have approved class actions challenging "across the board" discrimination, i. e., discrimination which can be manifested in various forms to the defendant's employees but which all allegedly originate from a single or unified underlying policy or pattern of discrimination attributable to the defendant-employer. *See, e. g., Senter v. General Motors Corp.,* 532 F.2d 511, 523–24 (6th Cir. 1976); *Rich v. Martin Marietta Corp., supra* at 340–41; *Barnett v. W. T. Grant Co.,* 518 F.2d 543, 547–48 (4th Cir. 1975); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969); *Mack v. General Electric Co.,* 329 F.Supp. 72, 75–76 (E.D.Pa. 1971).

 In determining the scope of a Title VII class, courts repeatedly have held that all members need not experience discrimination in the same way or be in positions identical to the named plaintiff's. *See, e. g., Senter v. General Motors Corp., supra* at 524; *Rich v. Martin Marietta Corp., supra* at 340; *Long v. Sapp,* 502 F.2d 34, 43 (5th Cir. 1974). Although there may be different manifestations of discrimination within the class, the common question of fact sufficient to satisfy Rule 23 is whether the alleged unlawful discrimination is individually practiced against employees or is a company-wide policy. *Johnson v. Georgia Highway Express, Inc., su-*

pra at 1124; *Martinez v. Bechtel Corp.*, 11 F.E.P.Cases 898, 903–04 (N.D.Cal.1975). Since the court may not decide at this point in the litigation whether such a company-wide policy exists, its inquiry must be limited to whether plaintiff has alleged facts sufficient to support the allegation of company-wide discrimination. In this regard the court should consider: (1) the nature of the alleged discriminatory practice; (2) the structure, size and location of the company and its branches; (3) the diversity of the class membership; and (4) the centralization of management and personnel decisions. *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 41 (N.D.Cal.1977). In analyzing commonality, though, the court should liberally construe the complaint and reject certification on this ground only when it is clear that plaintiff could prove no set of facts which would establish that there was a company-wide policy of discrimination.

■ The typicality requirement of 23(a)(3) overlaps to a large extent with the commonality issue. To satisfy this element in a Title VII case the courts have required that the name plaintiff demonstrate some "nexus" with the claims of the other class members. *Long v. Sapp, supra* at 42–43; *Piva v. Xerox Corp., supra* at 387–88. This "nexus" test entails consideration of factors similar to those previously enumerated. We believe three factors are particularly relevant: (1) the similarity between the conditions of employment of plaintiff and those of the other class members; (2) the similarity between the alleged discrimination perpetrated on the named plaintiff and that affecting the class; and (3) the compatibility of the relief requested by plaintiff and that appropriate for the class.

■ In applying these criteria there is no bright line for determining when plaintiff's claim is sufficiently analogous or connected to those of other class members to permit certification. The trial court has substantial discretion in determining the scope of the class, and we believe the court should liberally apply the nexus test. As long as plaintiff can allege some facts to show either that the challenged class members are in a similar employment situation as plaintiff or that these class members may have been adversely affected by an allegedly discriminatory practice of defendant, the court should approve the class.

■ Because defendant's objections to the scope of the class focus on the commonality and typicality requirements, we will analyze each of its objections against the criteria described above. First, defendant maintains that plaintiff's individual claim is unique and so personal that she cannot represent any other employees. We disagree. Those Title VII cases which have held that a named plaintiff's claim is too individualized to permit a class action have involved either an unusual employment decision adversely affecting the plaintiff or a disciplinary action against plaintiff as a result of that individual's conduct. *See, e. g., Martin v. Easton Publishing Co.*, 73 F.R.D. 678 (E.D.Pa.1977); *Mason v. Calgon Corp.*, 63 F.R.D. 98 (W.D.Pa.1974); *Patterson v. General Motors Corp.*, 10 F.E.P.Cases 921 (N.D. Ill.1974). In contrast, Ms. Hannigan alleges that she has been denied adequate compensation and promotional opportunities. These are the identical claims she makes on behalf of the class. In her deposition, plaintiff identifies other employees who, she alleges, similarly have been denied promotional opportunities. We conclude that these factual allegations taken together are sufficient to establish a nexus between plaintiff and other union employees at Vector Division, including those employees outside plaintiff's department.

Defendant next objects to the inclusion in the class of non-union employees at Vector Division. Defendant argues that a collective bargaining agreement controls employment conditions for plaintiff since it contains provisions concerning promotion, compensation and other conditions of employment for union employees, while the management of Vector Division independently establishes personnel policies for non-union employees. We conclude that this asserted distinction does not require the exclusion of non-union employees from the class.

Three factors establish plaintiff's nexus with non-union employees. First, plaintiff's EEOC charge arose out of defendant's denial of an opportunity for plaintiff's promotion to a lab position which potentially could have been occupied by a non-union employee. As a result of this charge, the EEOC District Director had to investigate alleged discrimination in a non-union position. Second, in her deposition plaintiff refers to technical jobs, which are held by salaried, non-union employees, as "male jobs", and she asserts that non-union women employees hold primarily clerical positions. Third, plaintiff argues that even under the collective bargaining agreement, the defendant retains exclusive control over the placement of employees in a particular position, and therefore all employees are subject to the same allegedly discriminatory promotion policy. Other courts have rejected the argument that union and non-union employees cannot be joined in a single class. *See, e. g., Ste. Marie v. Eastern RR Ass'n,* 72 F.R.D. 443, 449 (S.D.N.Y.1976).

We conclude that plaintiff has alleged sufficient facts to show either that other employees at Vector Division are similarly situated to plaintiff or that they may have been adversely affected by a discriminatory policy of defendants. Therefore plaintiff has met the requirements of Rule 23(a)(2) and (3) as it applies to all Vector Division employees.

Defendant next objects to inclusion of job applicants in the class. Defendant notes that plaintiff has failed to allege in her EEOC charge, in her complaint or in her deposition any discriminatory acts which would affect these potential class members. Only in her motion for certification does plaintiff raise the issue of discriminatory hiring but she fails to allege any specific facts to support this assertion. Although a nexus between plaintiff's claims and those of job applicants could be hypothesized, we conclude that it would be inappropriate for the court to allow the inclusion of these individuals in the class based upon the record as it now stands. This defect in the pleading, rather than a specific mandate of Rule 23, requires the exclusion of these individuals.

The final objection to the class concerns employees of Aydin Corporation in divisions other than Vector Division. The defendant maintains that the eight divisions of Aydin Corporation are autonomous, that they have little, if any, interaction with one another and that each division's personnel policies are independently established by the division management. The corporate headquarters employs only 12 persons and has no personnel department. The seven other divisions of the corporation, some of which have been existing businesses acquired by Aydin Corporation, make different products and are located in Pennsylvania, California, Texas and Kentucky. Defendant claims that each division is operated as if it were a separate corporate entity. Defendant's president states in his affidavit that each division maintains its own personnel policies based upon, *inter alia,* the type of business, location, labor market and past history of the division before acquisition by Aydin. He asserts that the corporation does not influence the divisions' decisions concerning hiring, promotions and compensation. Finally, defendant argues that plaintiff has failed to allege any acts of discrimination in other divisions and that plaintiff is unfamiliar with employment conditions and practices at other divisions.

Plaintiff attempts to show interrelation among the divisions by the number of transfers of employees from one division to another and by the fact that the corporation files an EEO–1 report to the government concerning equal employment policies of the company. Defendant replies that employee transfers are few in number (*e. g.*, since July 1973 only 11 employees have transferred to Vector Division while 228 openings have been filled there), and that these transfers were not required by the corporation but rather initiated by the employee. Defendant asserts that the EEO–1 report is only a consolidation of separate reports submitted by each division. Finally, defendant notes that Vector Division maintains an independent affirmative ac-

tion program for female employees as a defense contractor with a government contract in excess of $10,000.

■ Reviewing the record, we cannot conclude that plaintiff could prove no set of facts to show that there was a company-wide policy of discrimination. We agree with those courts which have rejected the argument that because individual hiring and promotion decisions are done by separate and decentralized personnel departments, a Title VII class action is necessarily inappropriate. *See, e. g., Senter v. General Motors Corp., supra* at 523–24; *Women's Committee, Etc. v. National Broadcasting Co.*, 71 F.R.D. 666, 669 (S.D.N.Y.1976); *Lamphere v. Brown University*, 71 F.R.D. 641, 646 (D.R.I.1976); *Martinez v. Bechtel Corp.*, 11 F.E.P.Cases 898, 903 (N.D.Cal. 1975). However, the factors noted by defendant lead us to the conclusion that plaintiff does not have a sufficient nexus with employees of other divisions to justify their inclusion in the class.

■ Plaintiff has not alleged any specific acts of discrimination in divisions other than Vector Division. The labor force, structure of management and operating procedures in other plants are not inherently similar to those in Vector Division. In fact, the various divisions produce different products, are of different sizes and have different labor requirements. Those cases which have permitted a nation-wide or geographically diverse class have involved: (1) employees who perform similar functions, *Wetzel v. Liberty Mutual Ins. Co., supra*; (2) employees working under a master or single contract, *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269 (N.D.Cal.1976); *Sagers v. Yellow Freight System, Inc.*, 58 F.R.D. 54 (N.D.Ga.1972); or (3) employees who have suffered the same disability, *Gilbert v. General Electric Co.*, 59 F.R.D. 267 (E.D.Va.1973). These similarities are not present in this case. We conclude that the fact that these facilities are part of the same legal entity by itself is insufficient to establish a nexus between plaintiff's claim and those of employees of other divisions.

■ We reject defendant's challenge of plaintiff's adequacy of representation. The Third Circuit has held that in order to satisfy Rule 23(a)(4): (a) the plaintiff must not have interests antagonistic to those of the class and (b) plaintiff's counsel must be qualified, experienced and generally able to conduct the litigation. *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendant has failed to allege how plaintiff's interests are antagonistic to those of the class. Union membership does not necessarily disqualify plaintiff from representing non-union employees. Although relief for each group might differ somewhat, defendant has not stated how the interests of two groups would conflict. Rather, a finding of a division-wide policy of discrimination apparently would be in the interest of all class members. Plaintiff's counsel appears to be experienced and able and therefore is qualified to proceed. We conclude plaintiff is an adequate representative.

■ We also find that plaintiff has satisfied the requirements of numerosity and of Rule 23(b)(2). Within Vector there are more than 75 female employees and therefore joinder is impracticable. As to the requirement of 23(b)(2), the alleged division-wide policy of discrimination would necessarily be action "generally applicable to the class." *Wetzel v. Liberty Mutual Ins. Co., supra*, 508 F.2d at 250. Since the relief requested by plaintiff is essentially equitable, a 23(b)(2) class is appropriate. *Id.* at 251–52.

## IV. CUT–OFF TIME PERIOD

■ Defendant objects to the date of November 8, 1972 as the cut-off date for past employees of Vector Division who must be excluded from the class. Instead, defendant asserts that the statute of limitations contained in Title VII requires that claims by employees who left defendant's employ on or before March 8, 1973, are time barred, necessitating the exclusion of these individuals from the class. We disagree.

The Third Circuit in *Wetzel v. Liberty Mutual . Ins. Co., supra*, 508 F.2d at 246, stated:

"A plaintiff may bring a class action on behalf of those who have not filed charges with the EEOC. This tolls the statute of limitations for all members of the class. But [plaintiffs] cannot represent those who could not have filed a charge with the EEOC at the time they filed their charges." (citations omitted).

Section 706(e), 42 U.S.C. § 2000e–5(e), which constitutes the Title VII statute of limitations, provides that an EEOC charge must be filed either: (1) within 180 days of the occurrence of an alleged unlawful employment practice if the charge is filed directly with the EEOC; or (2) within 300 days of the alleged act if plaintiff first files his or her grievance with a state agency. Although plaintiff here chose the former procedure, other class members could have utilized the latter option and still have timely filed an EEOC charge 300 days after they left defendant's employ. Therefore, only those employees who left defendant's employ 300 days before the filing of plaintiff's EEOC charge must be barred. Applying the 300 day limit, November 8, 1972 is the appropriate cut-off date.

For the foregoing reasons, plaintiff's motion for class certification will be granted for the class consisting of all past, present and future female employees of Aydin Corporation at its Vector Division plant except those who left defendant's employ on or before November 8, 1972.