**Arthur WELLS, for himself and all others similarly situated**

v.

**GENERAL ELECTRIC COMPANY and General Electric Company, Philadelphia Works.**

**Civ. A. No. 76–2014.**

United States District Court, E. D. Pennsylvania.

· April 4, 1978.

Wilbur Greenberg, Gary Green, Sidkoff, Pincus & Greenberg, Philadelphia, Pa., for plaintiff.

Morris R. Brooke, Philadelphia, Pa., for defendants.

### MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Arthur Wells filed this complaint charging General Electric (GE) with practicing racial discrimination in its employment practices with respect to black

management level employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. In plaintiff's motion for class designation, he proposes that he represent a class consisting of: (1) all blacks without technical degrees who have been employed by GE since February 10, 1975 in exempt positions;[1] and (2) all blacks who would have been employed in such positions during the same period but for GE's racially discriminatory employment practices. For the reasons that follow we will deny the motion.

Following four years in the armed services, Wells, a black male, attended college and eventually secured a Masters Degree from Case Western Reserve University. In March, 1966, after teaching in the Cleveland, Ohio public schools and serving in various capacities at the Human Engineering Institute in Cleveland, Wells was hired by the Lamp Division of GE in Euclid, Ohio as an Employee Relations Specialist. The next year plaintiff moved to the Lamp Division facility in Cleveland, Ohio to take advantage of a promotion to Human Relations Specialist. In July, 1970, Wells was promoted again and relocated to Columbia, Maryland in GE's Relations and Utilities Operation, Kitchen Appliance Division. Finally, in May, 1972, plaintiff moved to the Switchgear and Distribution Transformer Division at the GE plant in Philadelphia, Pennsylvania (Philadelphia Works). Plaintiff alleges that his agreement to move from the Maryland facility was conditioned upon the promise of management at the Philadelphia Works to promote him to the position of Union Relations Negotiator or Manager of Personnel Practices within a year of his transfer. From May, 1972 until the filing of this suit, plaintiff was employed at the Philadelphia Works in the position of Manager, Equal Opportunity/Minority Relations, Systems and Training. In February, 1974 and March, 1975, plaintiff requested to be moved to another position in the Philadelphia Works. On both occasions, plaintiff's supervisors at the Philadelphia Works refused the re-

quests and filled the positions that plaintiff sought with other people.

In August, 1975, plaintiff filed charges with the EEOC naming the Philadelphia Works as respondent and listing GE Corporate Headquarters in Fairfield, Connecticut under the category of "others who have discriminated against you." Plaintiff charged that women and minorities were discriminated against in the hiring, training and promotion for positions in the exempt category. Subsequently, plaintiff was issued a right to sue letter dated April 26, 1976 and this suit was commenced in accordance with the Title VII time limitations on June 24, 1976.

Defendant GE is an international company engaged in manufacturing and marketing over 200,000 products with total annual sales exceeding 13 billion dollars. GE is organized into nine operating groups each of which is broken down into a number of divisions. The eight domestic groups encompass more than 2,500 plants, locations and offices in 600 towns and cities. The Switchgear and Distribution Transformer Division is one of the seven divisions making up the Industrial and Power Group. The Switchgear and Distribution Transformer Division maintains 4 plants in Puerto Rico as well as single plants in Burlington, Iowa; Hickory, North Carolina; Shreveport, Louisiana; Pittsfield, Massachusetts; and Philadelphia, Pennsylvania. The Philadelphia location is the Philadelphia Works at which plaintiff was employed at the time this suit was initiated. Defendant employs approximately 3,700 persons at the Philadelphia Works.

In addition to the 300,000 persons GE employs in its domestic operations, defendant also has 75,000 employees in its facilities outside the United States. Defendant has 77,000 exempt employees, but it is difficult to estimate exactly what portion of this group does not possess technical degrees. Local managers at the 600 GE plants, facilities and locations retain the responsibility

---

1. Exempt employees refers to employees who are exempt from the wage and hour provisions

of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

for making decisions with respect to the employment of exempt personnel at their respective facilities.[2] Local managers fill more than 95% of their exempt positions without any approval from corporate headquarters. While individual managers may seek information about qualified candidates from other GE divisions and facilities, the decisions about promotion, hiring, and the like, rest in the local manager's discretion.

Salary for most exempt employees is also a decision vested in the local managers. The Board of Directors of GE does establish a general exempt employee compensation plan providing 28 levels of compensation with a range of salaries fixed for each level. The local managers are entrusted with the responsibility of implementing this system for 95% of defendant's exempt positions. Specifically, for all exempt positions below level 19, local managers have the responsibility for assigning a compensation level to each exempt position at their facility and for deciding the specific salary which should be paid each year to each exempt employee. It is against this factual backdrop that we must consider plaintiff's motion for class certification.

It is well settled that a plaintiff has the burden of proving that the requisites of Fed.R.Civ.P. 23 have been met. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974). Further, as recently noted by the Court of Appeals for the Sixth Circuit:

Despite the fact that Title VII actions are often described as "inherently class suits" and that the requirements of Rule 23 "must be read liberally in the context of suits brought under Title VII and Section 1981," the plaintiff in such an action, in order to establish the right to proceed as class representative, "must [like any other plaintiff] establish that the action meets the requirements of Rule 23(a);" employee discrimination suits do not represent exemptions from the terms of such Rule.

*Nance v. Union Carbide Corp.,* 540 F.2d 718, 722–23 (6th Cir. 1976), *cert. denied,* 431 U.S. 953, 97 S.Ct. 2672, 53 L.Ed.2d 269 (1977), (footnotes omitted), *quoting Rodriguez v. East Motor Freight,* 505 F.2d 40, 50 (5th Cir. 1974), *vacated and remanded,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *see, e. g., Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1312 (9th Cir. 1977). The four requirements listed in Rule 23(a) are: (1) numerosity; (2) common questions of fact and law; (3) typicality; and (4) adequacy of representation. Since the injunctive relief sought by plaintiff falls within Rule 23(b)(2), plaintiff must also show that defendant "acted or refused to act on grounds generally applicable to the class."

Plaintiff contends that, notwithstanding the scope and diversity of defendant's operations, his allegations of discrimination against the exempt employees who do not possess technical degrees fulfill the Rule 23

---

**2.** The affidavit of Donald L. Sorenson, Manager of the Relations Operation in the Switchgear and Transformer Division, lists the following limitations on the local managers' control over exempt employees:

  (i) GE is a party to approximately 185 different national and local collective bargaining agreements with a variety of unions and locals, and in filling any bargaining unit position, local managers must abide by the provisions of applicable collective bargaining agreements;

  (ii) With respect to higher level exempt positions in certain functions, namely, financial (manager of finance-section level and higher); law (counsel-division level and higher) employee relations (manager of employee relations-section level and higher), persons se-

lected by local managers to fill these positions must be selected from slates of candidates approved by the appropriate corporate vice-president;

  (iii) With respect to all exempt positions at department general manager level and higher, persons selected by local managers to fill these positions must be selected from slates of candidates prepared by the corporate Executive Manpower Staff and approved by the selecting manager's superior.*

  * Within the Industrial and Power Delivery Group, concurrence of the Manager-Group Organization & Manpower Operations is required for any candidate slate, developed at the local level, where the position to be filled is at section level and/or at Levels 15–18 in the exempt salary structure.

requirements. While conceding that actual individual employment decisions regarding exempt employees are not made by Corporate Headquarters, the plaintiff asserts that Corporate Headquarters has formulated a centralized policy which guides the careers of its exempt employees without technical degrees. This policy is manifested in guidelines and directives flowing from Corporate Headquarters. It is this centralized policy and the individual policies themselves which plaintiff contends support class certification. In support of these contentions and in addition to the more than 20 claims contained in his complaint challenging all conditions of employment, plaintiff cites a number of different policies which defendant allegedly applies on a centralized basis including: (1) promoting from within GE; (2) requiring persons to move to take advantage of promotions; (3) establishing minimum qualifications for exempt jobs, which are not applied uniformly in the exempt category by plant managers; (4) establishing intra-company courses which must be taken for promotional opportunities; (5) maintaining centralized computer files on all exempt employees; (6) monitoring careers of black employees; and (7) setting a general salary structure.

Our evaluation of plaintiff's contentions is guided by Chief Judge Lord's recent analysis of Rule 23 in *Hannigan v. Aydin Corp.,* 76 F.R.D. 502 (E.D.Pa.1977). In addressing the typicality requirement of Rule 23, Judge Lord emphasized the need for a nexus between plaintiff's claims and those of the persons he seeks to represent. *Id.* at 508; *see Bachman v. Collier,* 73 F.R.D. 300, 305 (D.C.D.C.1976). In applying this requirement to a motion for certification of a company-wide class, he noted:

> Those cases which have permitted a nation-wide or geographically diverse class have involved: (1) employees who perform similar functions, *Wetzel v. Liberty Mutual Insurance Co.,* [508 F.2d 239] *supra* ; (2) employees working under a master or single contract, *Alaniz v. California Processors, Inc.,* 73 F.R.D. 269 (N.D.Cal. 1976); *Sagus v. Yellow Freight System, Inc.,* 58 F.R.D. 54 (N.D.Ga.1972); (3) employees who have suffered the same disability, *Gilbert v. General Electric Co.,* 59 F.R.D. 267 (E.D.Va.1973).

76 F.R.D. at 510. The claims of plaintiff do not fall within any of these categories.

First, it is clear that the exempt employees without technical degrees are not working under a master contract. Indeed, the affidavits of Donald L. Sorenson, Manager of Relations Operation of the Switchgear and Transformer Division, and David J. Dillon, Staff Member of Corporate Employee Relations Operations, suggest that a number of different collective bargaining agreements govern the working conditions of some exempt employees. Further, plaintiff has not cited any contractual policy which is applied uniformly to class members.

Second, plaintiff cannot argue that all the members of the proposed class perform similar functions. The class that plaintiff seeks to represent bears no resemblance to the company-wide class in *Wetzel v. Liberty Mutual Insurance Co., supra.* In *Wetzel,* the plaintiffs represented a class of all female technical employees in Liberty Mutual's claims department. Within the claims department, only two types of jobs were available: (1) claims representative and (2) claims adjuster. On the other hand, the class sought by Wells is composed of all exempt employees who do not possess technical degrees. This class includes persons serving in the following capacities: mail room supervisors, plant safety specialists, supervisors, foremen, financial planners, purchasing agents, lawyers, plant managers, pilots and radio and television announcers. The differences within the class are illustrated not only by the variety of occupations included within the class, but also by the fact that defendant has established 28 levels of exempt employees. The diversity within the exempt group of employees bears upon several of the Rule 23 requirements.

Courts have been reluctant to certify classes composed of employees who do not stand in a similar status to their employer. *See Gibson v. Local 40, Supercargoes &*

*Checkers of Internat'l Longshoremen's & Warehousemen's Union*, 543 F.2d 1259 (9th Cir. 1976) ("casual" clerks not permitted to represent permanent clerks); *Peterson v. Albert M. Bender Co., Inc.*, 75 F.R.D. 661 (N.D.Cal.1977) (underwriter not permitted to represent secretaries, clerks and other clerical personnel); *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 55 (N.D.Cal.1977) ("workforce compromises numerous different occupations, including, among others, office and clerical workers, sales persons, technicians, professional painters and other craftsmen and operators, truck drivers, warehouse employees, and supervisors and managers"). Such a variety of occupations can present commonality and typicality problems since it is not clear that the policies highlighted by plaintiff apply with equal force to each segment of the class. For example, the intra-company educational programs may impact very heavily upon the plaintiff who is a career manager but have no effect whatsoever on a company lawyer.

Furthermore, such a broad class raises adequacy of representation problems. This factor is particularly important in light of the res judicata impact of class action litigation. *See Gibson v. Local 40, Supercargoes & Checkers, supra* at 1265; *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1126 (Godbold, J., concurring); *Droughn v. FMC Corp.*, 74 F.R.D. 639, 643 (E.D.Pa.1977). The mere scope of the undertaking in representing such a diverse class has given some courts pause; as noted by the court in *Harriss v. Pan American World Airways, supra* :

> [A] claim by a small local group of plaintiffs to represent all racial minority employees of a large nation-wide firm should raise a serious doubt in the court's mind, regardless of whether all of the other requirements of the rule are met, as to their ability adequately to present a case on behalf of such a large and diverse class.

74 F.R.D. at 43. Also, the likelihood that the particular practices cited by plaintiff could impact differently on varying segments of the class presents a serious problem at trial. The *Harriss* court recognized the danger resulting from this problem:

> [B]ecause of the crucial importance of statistics in Title VII cases, the dimensions of the class may well affect the merits of the case. An employee of a large employer may be able to make an effective statistical case based upon one operational unit but may find the statistics to be hopelessly diluted when applied to a larger segment of the work force. A claim possibly valid as to a limited class may be lost in an attempt to prosecute it on behalf of a broad class.

*Id.* at 44. *Cf. Hauck v. Xerox Corp.*, 78 F.R.D. 375 at 379 (E.D.Pa., 1978).

In sum, the variety of occupations and salary levels within the exempt class illustrates that the class members proposed by plaintiff do not all perform similar functions for GE. Simply because the class may be identified by a label such as exempt employees without technical degrees does not mean that all the class members bear the same employment relationship to defendant. The failure of the class to perform similar functions not only highlights the typicality problem identified by Judge Lord, but also illustrates the commonality and representation difficulties present in this case. These problems are not present where the class is affected by a central policy uniformly applicable to all class members. *See Hauck v. Xerox Corp., supra* at 378; *Droughn v. FMC Corp., supra*, 74 F.R.D. at 642.

The final category mentioned by Judge Lord as appropriate for nationwide certification is a class where all members suffer from the same disability. An example of the application of this principle may be found in *Harriss* where the plaintiff challenged the defendant's policy of requiring female flight attendants to take pregnancy leave and denying them seniority and other benefits while on leave. 74 F.R.D. at 47; for other examples of a uniform policy, *see Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895 (5th Cir. 1978) (10th and 12th

grade and college degree requirements); *Padilla v. Stringer,* 395 F.Supp. 495 (D.N.M. 1974) (high school degree requirement). In short, a nationwide class action may be appropriately maintained where defendant formulates a policy which is uniformly applied to all employees within the class. The policies cited by plaintiff, however, do not contain the element of uniformity necessary to satisfy the Rule 23 requirements. Unlike the pregnancy policy at issue in *Harriss,* several of the policies plaintiff seeks to challenge are implemented on an individual and discretionary basis by the local facility manager. For example, the salary policy discussed above is set by the Board of GE, but is applied to any particular exempt position or employee by the local manager. Under this practice, any discrimination will flow from the application of the policy rather than the formulation of the policy at the corporate level. Since the application occurs on a local level, it follows that discrimination in salaries is not a common question or typical for the class proposed by plaintiff. This same analysis would apply to plaintiff's contention that "[d]efendant has set minimum qualifications for exempt jobs but has allowed them to be waived for white employees. The qualifications are formulated at headquarters and passed on to all operating units. GE's qualifications are applied in a discriminatory way." Plaintiff's Brief in Response to Defendant's Memorandum in Opposition to Class Action Motion at 9. Many of the policies cited by plaintiff lack the uniformity necessary for class action treatment because the policies are applied on a discretionary basis at the local level. *See Rowinski v. Vaughn,* 76 F.R.D. 241 (D.C.D.C.1977).

The multi-pronged attack proposed by plaintiff also differs from *Harriss* in that it involves adequacy of representation problems. As noted earlier, the diversity of the class suggests that the policies cited by plaintiff may not apply to all members of the class. In this circumstance, different segments of the exempt employees will possess the strongest motivation to press those claims that most directly influence their employment conditions. Also in challeng-

ing so many policies, it is possible that some may become lost in the course of litigation. As we noted in *Droughn v. FMC Corp., supra :*

> [I]t is the nature of litigation that an attorney with several claims to relief is prone to press her stronger claim most vigorously, often to the practical exclusion of other claims, which, though not without merit, seems less likely to yield favorable results. Where, as in class actions, a case pressed to its conclusions will result in a judgment on the merits as to [the entire class], the possibility that the claims [of a portion of the class] might be forever determined by less than a full effort on the part of the plaintiff is an unacceptable risk.

74 F.R.D. at 643. We conclude that plaintiff's challenge does not fall within "the single disability" category of cases since the policies he seeks to attack are not applied uniformly. Further the number and diversity of the policies covered by plaintiff's challenge present serious adequacy of representation problems.

Finally, it is possible that rather than challenging the guidelines and directives individually, plaintiff contends that all of these policies taken together weave a web of centralized control which is exercised by Corporate Headquarters and would support certification on a nationwide basis. It is true that a portion of GE's exempt employees are not trained as product-oriented specialists but rather as professional managers who may work in any one of GE's many divisions. This is demonstrated by plaintiff's frequent transfers. It is also true that defendant is not organized along geographic lines, but along product lines. However, these factors do not support recognition of a nationwide class. First, as noted above, the general policies cited by plaintiff are in some instances nothing but guidelines which are interpreted and applied on a local level. Second, any policies which do emanate from Corporate Headquarters are so general that they do not establish a sufficient degree of control to conclude that plaintiff's claim is typical of

the class he proposes. For example, even though plaintiff moved several times, these moves were not ordered or supervised by Corporate Headquarters but were the product of local managers decisions. This is illustrated by plaintiff's claim that his agreement to transfer to the Philadelphia Works was conditioned upon the promise by plant management that he would be promoted again within a year. Thus, even the policy of free transferability was subject to individual application.

Finally, we are unable to evaluate whether the class proposed by plaintiff might be properly narrowed to the Philadelphia Works or some other component within the defendant since we have not been provided with figures for any of these groups. Therefore, we are unable to evaluate whether the numerosity requirement has been satisfied for a class limited in this manner.